The opinion of the court was delivered oy
Duncan, J.
The plaintiff in error has assigned several reasons for the reversal of this judgment, yet the whole may be compressed within one narrow proposition: was the defendant in error, or the plaintiff below, bound to tender to the’plaintiff in error, the amount of purchase money due on the articles between her father, Martin Rapp, and Peter Bricker, the surviving executor of Harman A. Layer, before bringing the action and since it was in court, on the trial ? For it is certain, that Robert Harris, is entitled to that amount with interest, making reasonable deductions for rents received during the time he was in the possession, after Bricker’s surrender to him.
If this contract had been purely executory, and no possession delivered by Harris to Layer, nor by Bricker to Rapp, then the action of ejectment would have been in the nature of a bill in equity to compel the specific execution of the agreement between Harris- and Layer, and Bricker and Rapp, in which Harris and Bricker must have been made parties; and as Harris had the legal title, and all interest in the agreement between him and Layer, by Bricker’s assignment, subject, however, to the prior equity of Rapp, the sum due to Bricker, as I have already stated, should have been tendered to Harris, and as I think, before the bringing of the action, and been brought into court on the trial. The case of Moody v. Vandyke went on different principles. There the legal title was in the plaintiff, and equity alone in the defendant: the sum uncertain. Here Harris had the legal title, the plaintiff only an equitable title; *42 the sum certain, which Lapp was bound to pay on the 1st April, 1805, before he could demand either title or possession. This would be a condition precedent, without performance, or offer to perform which, the plaintiff could not recover in ejectment. The delivery of possession and payment of the purchase money, were concurrent, and the party who desired to enforce the contract, must always show a performance, or offer to perform his part of the agreement. If Bricker or Harris called for the money, conveyance must have been previously tendered to Rapp or his heirs. So, Rapp, or his heirs, before they could require conveyance and demand possession, must have tendered the purchase money. Harris represents Brick-er, and holding the legal title, is the hand to receive the money, and execute the conveyance. On the articles between Harris and Layer, Harris was not obliged to make the title, until all the purchase money was paid. There is no time fixed for delivery of possession to Layer; but from the nature of the contract, it must be understood, that it was to be delivered before the last payment, which was not demanded until five years after the contract. These payments were to be annual from 1795 to 1800. In 1800, there is evidence that Layer was in possession, and from 1796 to 1800, had paid more than half the purchase money. He died in possession; his executors came into possession, and in 1804, Bricker, the surviving executor, articled to sell to Rapp, who went immediately into possession, and died prior to the 1st April, 1S05, before the purchase money was to be paid. So far as respected the possession payment of purchase money was waived; the condition precedent dispensed with; the contract executed by delivery of possession. This possession descended to the heir of Rapp, the plaintiff in ejectment, and must have been held by the administrator, Krouse, in her right, until the 29th July, 1808, when he surrendered it to Bricker, who, the day after, delivered it to Harris. So far as respected the right of Rapp’s heirs, these surrenders were totally unauthorised, and the heir of Rcipp was of age. Application should have been made to her: she was to judge, whether she would proceed in the contract, or relinquish it. ifrowse’s abandonment on the ground of want of assets, and the inadequacy of the value of the property to discharge the amount of purchase money, could not affect the interest of the heir in the contract, nor lawfully change the possession If she was an infant, as is asserted and not denied, the administrator coming into possession would hold it, quasi guardian; as a trustee; and his surrender would be a breach of trust; and Bricker and Harris’s entry arising from this violation of duty, they would be considerq^ as trustees, and bound to retain the possession in the samo plight/they received it.
Though I entertain no doubt of the fairness of this transaction, yet the policy of the law, without regard to the motives which influence the parties, or weighing, whether, at the time, the act is beneficial or otherwise to the party interested, would place them *43 in the same state they were in, when the possession was delivered, leaving the rights of the parties as they stood, open to discussion. The right of Harris to the purchase money, is unquestionable. In restoring the possession to Rapp’s heir, to which she has a right equally clear,-the right of Harris to the money remains. Ejectment is a possessory action. The right of possession may be in one and the title to the property in another. One having the right of possession, may recover in ejectment against him who has the right of property; for if the plaintiff shows himself to have been in the peaceable possession, and that he was forcibly dispossessed, it will enable him to recover, and. the defendant cannot set up title in bar. Cro. Eliz. 822, 438. Cro. Jac. 437. Cro. Car. 50. Vaugh. 299. 2 Saund. 112. 2 Bl. 199. 6 Johns. 218. 9 Johns. 74. 10 Johns. 333. 11 Johns. 504. So a party entering under the title of A., surrenders it to B., who claims adversely, B. is in quasi tenant, and cannot object to the title of A. 18 Johns. 94.
The possession of Rapp and Rapp’s heir, was a rightful possession, and the plaintiff in error did not obtain it by force; yet he did so illegally, and under the whole circumstances of the case, would be converted into a trustee for Mrs. Bell, and cannot resist her claim to a restoration of the possession. If Harris had made valuable improvements under the eye of the defendant in error, she having knowledge of her right, and acquiesced in them, without any notice, she would be postponed, and never suffered to recover on a contract where the property was rendered, at his expense, of much greater value, where no money had been paid, and which she, by this acquiescence, abandoned as much by her acts as if she had formally and in writing renounced it. Or, if she was an infant, when the surrender was made, and did so acquiesce for years after her coming of age, this would be a confirmation of the surrender. But nothing of this appeal, nor was the court desired, nor did they give an opinion, on a cáse with that aspect.
There is a principle in Basler v. Neisly, 2 Serg. & Rawle, 354, which establishes the right of recovery by a vendee, who had been ousted without a tender of the purchase money. There, it is true, that by the terms of the contract, possession was to be delivered before payment of all the purchase money. But where the vendor puts the vendee in possession before payment of the money, though he was not bound by the agreement so to do, yet having done it, he waives the payment, dispenses with the condition, and if he forcibly regains the possession, or acquires it from the trustee of the vendee, the qua tenant, he is bound to restore it. This preserves the lights of the parties, and does equity on all sides.
There is a dictum of Chief Justice Spencer, in Jackson v. Sulye, 16 Johns. 197, that a forcible entry on the premises, will not estop the defendant from asserting an independent right to retain the possesion. This dictum related to a naked possession. But where a vendor delivers possession to a vendee on a contract, I do *44 not think, that if he had not paid the purchase money, the vendor, entering and dispossessing him by force, because he had not paid, could set up this non-payment as a defence; for the possession was not an intrusion, a wrongful possession, an entry without lawful right; but a rightful possession, acquired by a legal entry; and I do think he would be bound to restore the possession wrongfully taken from the vendee, put him in statu quo, and then proceed against him legally on his rights. When Harris obtained the possession, the agreement had not been abandoned; possession had been held under it, and the possession continued in the heir of Rapp. Rapp’s taking possession was notice to all the world. It is so under the recording acts, and a subsequent purchase, where possession bad accompanied an unrecorded deed, is affected by this possession with notice of a prior deed. Possession is always constructive notice, 18 Johns. 558, and it is notice of the actual interest the tenant has, either as tenant on agreement to purchase, or purchase completed.
On this general view of the subject, without going into detail on each minute item assigned as error, but considering the charge as one whole opinion, on a series of propositions, without splitting it into particles, and taking it up piece-meal, I am of opinion there is no error in it, and that judgment be affirmed.
Judgment affirmed.