# Dixon *against* Oliver.

In an action of ejectment by a vendor against a vendee who has not paid his purchase money, the plaintiff is only entitled to have a conditional verdict and judgment, to be released upon the payment of the balance of the purchase money, at such time as the jury may prescribe. And this rule is not altered by the facts, that much time has elapsed since the execution of the agreement, and that the defendant had intimated his inability to pay.

In an action of ejectment by a vendor, against a vendee, it is not always necessary that the plaintiff should be able to prove the tender of a deed before suit brought; the necessity for it often depends upon the contract. It is not necessary in a case where the vendee has previously declared his inability to perform his contract.

ERROR to the common pleas of *Mercer* county.

[Dixon v. Oliver.]

Ejectment by Walter Oliver and Eleanor Junkin, against Samuel Dixon.

The opinion of the Court was delivered by

HUSTON, J.—The facts of this case, in their order, are as follows: The plaintiff showed a deed, dated the 1st of October 1818, from Joseph Smith, treasurer of Mercer county, to Benjamin Junkin, for donation lot No. 789, 4th district of donation lands, sold for taxes of 1816, 1817; also a deed from Benjamin Junkin, in consideration of 50 dollars, to Walter Oliver; and to said Oliver, in trust for the heirs of John Junkin, deceased, as tenants in common—this deed dated the 4th of July, 1820.

It was proved that a man called Ray had purchased a part of the lot from Oliver, and gone into possession, paid part of the purchase money, and made some improvements. Dixon purchased the interest of Ray for about 200 dollars, and paid about 80 dollars to him. What Ray was to pay Oliver does not precisely appear, nor what agreement he had with Oliver; but on the 10th of March, 1830, an agreement was executed between Oliver and Dickson, by which Oliver covenanted to convey to Dixon his own interest, and that of Eleanor Junkin, minor daughter of John Junkin, in 100 acres, the west end of lot No. 789, subject to one half of the bond or bonds given for the surplus money, when the land was sold for taxes: the deed to be made when the money was paid; and Dixon covenanted to pay on or before the 30th of January next, 130 dollars. This 130 dollars was stated by counsel, and, as I understood, admitted to be the amount of the money due from Ray to Oliver.

Plaintiff also read a letter from Samuel Dixon, as follows:—

July 15th, 1834.

I have this day come this far on my way to see you, but I think that it is better not, as I think it not necessary for me to rent at present, and 100 dollars is a small portion for what I have done, and if I have it, I will have it without renting, and so remains.

SAMUEL DIXON.

MR. WALTER OLIVER.

The plaintiff also proved that Dixon had told a witness, that Oliver had given him till the 15th or 20th of June 1834, to pay for the land; and that Dixon at one time, but he could not fix the time, told witness he did not want to have any property in his own name yet a while.

There was then proof, by defendant, that Dixon went into possession at the date of the article, and Ray moved out; that Dixon had built a cabin house, and had 35 or 40 acres cleared, and more than half of it in wheat, rye, corn and oats.

Plaintiff then proved by a witness, that the last of June or July, the defendant came to witness where he was clearing; understood defendant to say he was going on his way to Oliver; his time was out he was to pay—Oliver had used him like a gentleman—Oliver

[Dixon v. Oliver.]

wanted him to lease; said he did not lease it, and would not; said may be Oliver would give him longer time. Another witness proved that Dixon, in June 1834, told him, that Oliver and he had made an article about a piece of land; said the time was out and he wanted to borrow money to pay Oliver; said if he could pay part Oliver would wait for the rest.

The plaintiff also showed an article of agreement, between Walter Oliver and Eleanor Junkin, of the one part, and Alexander Laird, dated the 25th of June 1834: by this they agree to sell to Laird, and to convey as soon as the payments are made, the same 100 acres before contracted to be sold to Dixon, and to give possession on the 1st of April then next. And Laird agreed to pay for the same 500 dollars, in manner following: 150 dollars at the date of the article; 150 dollars on receiving possession; 100 dollars on the 1st of April 1836; and 100 dollars on the 1st of April 1837. On this article was indorsed a receipt for 150 dollars.

This last paper seems to have been read without objection, but for what purpose, fairly connected with the matter trying, we do not see; nor how a transaction between the plaintiffs and a third person, of which defendant does not appear to have any knowledge, can affect him. The first two objections to the plaintiff's recovery can not be of any avail. The whole legal title was shown in W. Oliver; he then could support an ejectment on it; but he was also, as to part, a trustee for the heirs of John Junkin, and still he could support an ejectment for them, in his own name. Eleanor Junkin was joined in the suit as plaintiff; and we may suppose it was so well known in that county, that she was the child of John Junkin, that it was not thought necessary to prove it. But suppose she was not the heir of John Junkin, nor one of his heirs, still W. Oliver having shown title to the whole, could recover the whole, although one or more were joined as plaintiffs, in whom no title is shown; and this by act of assembly, and perhaps, could have done so without the act: for, although the omission of a plaintiff, or the addition of one, having no interest, is error in matters of contract, it is, perhaps, otherwise in an action of ejectment.

There is also error assigned to the charge, and to different parts of it. The court say correctly, " where a person has entered into articles of agreement for the purchase of land, has entered into possession under the agreement, made valuable improvements, but has failed to pay the purchase money at the time specified for its payment, he has such an equity, that on an ejectment brought by the vendor to recover the possession, and thus rescind the contract, a jury, under the direction of the court, may return a verdict in favour of the plaintiff, ascertaining at the same time the amount of purchase money due, and fixing a reasonable time for its payment; on which the finding for plaintiff is to be released." I would have said, the jury in all such cases, unless something has occurred out of the ordinary course, and more than mere delay of payment, must find the

[Dixon v. Oliver.]

amount due, on payment of which into court, the verdict is to be released. The allowing the jury to give a period beyond the time of trial, has grown into use, and could not be at once altered, without causing surprise, and, therefore, in some cases, injury to the party. The time must, however, be reasonable, and may be very short, or more extended, according to circumstances.

But the court instructed the jury, that in the present case, if Oliver had not, by parol, extended the time, the jury would not have been justifiable in returning a verdict to be released on payment of debt and interest. We find the case of Youst *v.* Martin, in 3 *Serg. & Rawle* 423; the *data* are not, perhaps, correctly printed, nor very clearly stated; but they seem to be, that James M'Lean, in March 1793, entered into articles to sell the lands to John Martin, who went into possession, and paid a considerable part of the purchase money; in 1794, M'Lean recovered the possession, and in 1802, agreed by articles, to sell to Youst, and put him into possession. From Judge Hamilton's charge, page 426, I suppose it was not in 1794, but 1799, that M'Lean recovered, and that Martin being dead, his heirs took no step till 1808, when they made a tender, and brought suit. The delay, in that case, was greatly beyond what had occurred here; and one of the errors assigned was, that the jury ought to have been told it was conclusive. Chief Justice Tilghman says, the court was right, in refusing to charge as requested; whether the contract was, or was not relinquished, was a question depending on a variety of disputed facts: these facts, it was not for the court to decide. And the present chief justice, in commenting on the effect of the recovery by ejectment, and the delay of bringing suit, says, "time is the essence of a contract at law; but in equity, it may be a subject of compensation; mere default of payment of money at a ·stipulated time, in general, admits of compensation. The plaintiff not having performed his part of the agreement at the stipulated time, is not a sufficient ground for a court of equity to refuse its assistance, unless from the nature of the contract, compensation cannot be made." There is a difference between the case of a vendee under articles out of possession, and one who has entered *into* possession, and is constantly improving the property; in the first case, mere length of time may bar his recovery, though he tenders the money after long delay; but I know of no case of a purchaser in possession, who has not been permitted to hold, on paying the money into court, or paying it at the time prescribed by the jury. *Trifling improvements* are so, or not, under different circumstances; one or two hundred dollars may be a trifling matter in the sale of a valuable farm, whereof the yearly rent exceeds that sum; but so much expended on one hundred acres of wild land, worth one dollar an acre, is not a trifling improvement. What doubles or trebles the value of the land must, in that case, be a valuable improvement.

The case of Harris *v.* Bell, 10 *Serg. & Rawle* 39, is like the last cited case, in which other points occurred, but the effect of delay

[Dixon v. Oliver.]

of payment must have been considered, and decided before the other points arose. In that case, the purchase was made in 1795, and partial payments were made up to 1800. The purchaser died, and his executor sold it in 1804 to another, who died in 1805; in the mean time, no money was paid to Harris from 1800 till 1808, when the personal representatives of the last vendee delivered possession to those of the first vendee, and he surrendered it to Harris. When the heir of the last vendee came of age, she brought ejectment. and recovered; and this too, without tendering the money; because Harris had entered when he had no authority to do so. And a stipulation to pay what should be found due, was all that was required.

On the authority of these cases, and the general current of our decisions, the court below ought to have instructed the jury differently as to the effect of mere delay in the payment of the purchase money.

But the court further instructed the jury, " if they were satisfied, from the conduct, expressions, and letter of the defendant, where he refers to a previous understanding between the parties, were such as to induce Mr Oliver to believe, that if he did not pay the money before the 15th or 20th of June 1834, he was then to give up any claim to the land under his contract, and that in consequence of this understanding Mr Oliver entered into articles of agreement for the sale of the land to Laird, the defendant has no defence either in law or equity." In the first place, we have all looked in vain in the testimony, for any evidence of *an agreement by Dixon* to give up all claim under his contract, if he did not pay on the 15th or 20th of June. There is evidence, that, at some time, and for some reason, Mr Oliver had told Dixon, that if he did not pay by that time, he must take a lease, and become a tenant. There does not seem to be any evidence that Dixon ever agreed to this.

A witness proves, that Dixon said Oliver had used him well; that Dixon was trying to borrow money; that he said Oliver wanted him to leave it; but he had not leased it, and he would not. And in the letter, he says, " I think it not necessary for me to rent at present, and a hundred dollars is a small portion for what I have done; and if I leave it, I will leave it without renting." Here again is evidence that Oliver had proposed that Dixon would take a lease, but no evidence that he had agreed to take one; and his final determination was not to rent it. Besides, it is by no means clear, that the one hundred dollars mentioned, was not part of the contract proposed; and it is not certain, whether Oliver was to pay so much, or whether Dixon was demanding so much, before he would give up the contract. But suppose Dixon had, by parol, agreed to pay by a certain day, or forfeit his labour and right; and suppose he put this in writing; made a mortgage, in which the estate was conveyed to Oliver absolutely to be void on paying a specified sum on a certain day, otherwise, to be and remain a valid conveyance for ever. It would not be in his power to recover in ejectment, if Dixon had

v.—3 p

[Dixon v. Oliver.]

brought the money and interest into court at the trial.   So a bond for 200 dollars, to be satisfied by the payment of 100 dollars on a certain day, otherwise, to remain in full force and virtue, is only a security for the 100 dollars and interest.

From the frame of the sentence, it might be supposed, the judge put the matter to the jury, as depending on how Mr Oliver understood the matter, and no notice to be taken of how Dixon understood it; but I feel satisfied, this is an inadvertence of expression; the judge well knew, that an agreement required the consent of two parties.   The contract might have been rescinded by cancelling the articles of agreement, or by an indorsement on the back of them, or by a separate writing; and, perhaps, where it was clear that it did not proceed from pressure of circumstances, by a deliberate giving back possession to the vendor.   But it will not be rescinded, say the cases cited, by the vendor bringing ejectment and recovering possession; nor by the vendor entering by consent of the guardian, if the minor dissents on coming of age; but the vendee, on paying arrears of purchase money and interest, may still, in many cases, recover.   It will not do, then, to say, a vendee in possession, who has made extensive improvements, can be turned off, or the contract rescinded, because the vendor has told him, after the money was all due, you may have until a certain day to raise the money, and if not paid then, you must take a lease, and become a tenant; nor would a vendee, in such circumstances, be bound, (as a general rule,) if he was, by parol, to agree to such terms; he might, unless under some special circumstances, still retain his contract, on paying at the trial, or at such reasonable time as the jury may direct.

There was another point made; that the plaintiff could not recover, unless he had tendered a deed, and demanded the balance of the money.   Without entering into the question, or deciding whether this must be done in all cases, where the plaintiff wishes to rescind a contract, or to enforce compliance on the other side, we may say, that it often depends on the terms of the contract; sometimes, it may be, and is, dispensed with by the party; and here, we think, enough passed between the parties, after all the money was due, to show that a tender by the plaintiff was, in substance, dispensed with.   If, however, on another trial, the defendant shall, at the trial, or on a day prescribed by the jury, bring the money into court, the court will see that it is not taken out of court by the plaintiff, until he files with the prothonotary a deed to the defendant.

Judgment reversed, and a *venire de novo* awarded.