IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT, SEPTEMBER TERM 1841.

## Wykoff *against* Wykoff.*

If a vendor of land or real estate, after having put the vendee in possession agreeably to the terms of sale, and received part of the purchase money, take possession of it again and use it, without the consent of the vendee or his heirs, he or his assignee to whom he has sold the land a second time, is chargeable in an action of ejectment brought against either by the first vendee or his heirs, with the rents, issues, and profits, as long as he holds and uses the same, to be applied to satisfy any balance that may be due and unpaid, of the purchase money at the time of retaking the possession, so far as the profits may be requisite for that purpose, when sufficient to answer it.

If the regaining the possession by the vendor in such case, be effected by means of collusion with the tenant of the first vendee or his heirs, it is not necessary that a tender of the residue of the purchase money should be made by the latter before instituting an action of ejectment to recover the possession.

The defendant in the ejectment in either case, will not be permitted to give evidence of the value of the improvements made by him on the land, which were not necessary for the profitable enjoyment of it.

ERROR to the District Court of *Crawford* county.

This was an ejectment, brought by the defendants in error, William E. Wykoff, Sarah Wykoff, John B. Wykoff, Eliza Ann Wykoff, Susan Wykoff, and Rebecca Wykoff, children and heirs of Elias Wykoff, deceased, against the plaintiff in error, William

---

* The publication of this and the two following cases has been unavoidably postponed.

III. — 61　　　　　　　　2 Q　　　　　　　　(481)

Wykoff, to recover the possession of 100 acres of land. Both parties derived their respective claims to the land from William Wykoff, senior, the grandfather of the plaintiffs, and the father of the defendant.

The plaintiffs claimed under a parol sale made by their grandfather to their father, under which the latter went into possession of the land in 1821, then in a wild and unimproved state, made large and valuable improvements, consisting of a dwelling house, barn, and the clearing, fencing and cultivating of about 30 acres of the land, beside having paid, at least part, if not the whole of the purchase money. Whether the whole of the purchase money was paid or not, supposing the sale to have been made, was a disputed point. The father of the plaintiffs died in possession of the land in 1826, when the widow, the mother of the plaintiffs, who were all minors at the time, took possession of the land, and occupied it, by residing on it with her children, and having it cultivated and tilled by means of croppers, until September 1830, when she gave it up to a tenant, whom she left in possession. But in February following (1831), the tenant, at the instance of the grandfather, as it was alleged by the plaintiffs, and as some of the evidence tended to prove, gave up the possession of the land to him.

The plaintiffs, after having given evidence tending to prove all these matters, as also the payment of the purchase money, further, in order to establish beyond all doubt, that the grandfather, who retained possession of the land and occupied it till October 1833, was fully paid the balance of it, if any remained unpaid, at the time he took possession of the land, by the receipt of the rents, issues and profits thereof, proposed to ask a witness, under examination, what the annual value of the land was worth at and during the time the grandfather took and held possession of it. This was objected to by the defendant; but the court overruled the objection and admitted the evidence; which was excepted to by the defendant, and made the ground of the first error assigned.

The defendant claimed to be a *bonâ fide* purchaser from his father for a valuable consideration, without any notice of the prior sale by parol of the land to his brother Elias Wykoff; and gave in evidence a deed of conveyance, in fee, from his father, dated the 9th of October 1833, in consideration of $600 therein mentioned; $500 of which he gave his bond for, and received from his father a credit for the remaining hundred. The father being dead at the time of the trial, had, however, previously to his death, as it appeared, bequeathed, by will, the bond to the defendant, as his portion of the testator's estate. The defendant then, among other things, offered to prove that he had made valuable improvements on the land, by putting up additional buildings, and clearing and fencing more of the land, and what these things were all

[Wykoff v. Wykoff.]

fairly worth.  The plaintiffs objected, and the court overruled the evidence; to which the defendant took exception, and assigned it for the second error.

The defendant also submitted three points to the court for its direction thereon to the jury: but as the answers of the court to the two last only were excepted to, it is unnecessary to state the first.

The second was, that a tender of the balance of the purchase money should have been made before bringing suit; and not having been done, the plaintiffs could not recover.  The court replied " that this point was answered in the general charge."  In the general charge, the court instructed the jury on this point, " If you find the existence of a contract for the purchase of the land by the father of the plaintiffs from their grandfather, and that it was partly executed, by a delivery of the possession, in pursuance thereof, to their father; that he paid the purchase money, in whole or in part, and made valuable improvements thereon, upon the faith of his contract for the purchase; then the yearly rents and profits, being enjoyed by the person holding the legal title, may be set up as an extinguishment of the purchase money, as far as they will go.  And if the rents and profits, with the payments made, extinguish the claim for the purchase, deducting $100, that the vendor did not require to be paid until after his death, then you can find for the plaintiffs; but if they do not pay the purchase money, the plaintiffs cannot recover, without first tendering a sum sufficient to cover the balance of the purchase money: unless, however, you believe that the defendant went into possession, after having procured it from the tenant of the land, by an arrangement to get him to give up possession; or if he had full knowledge that his father had procured the possession from the tenant of the widow: because, to whomsoever the tenant surrendered it, if there was a right in the heirs of Elias Wykoff, that person holds as a trustee for that right; and a person coming in under an individual, procuring such surrender, with notice of it, would be affected by it.  If it was wrongful, the person could be turned out of possession without tendering any purchase money."

The third point was, " that the annual profits of the land, after possession taken by the defendant, cannot be allowed as payment of the purchase money, so as to exonerate the plaintiffs from the necessity of a tender thereof;" which the court denied.

*Riddle* and *Derrickson*, for the plaintiff in error.  The court erred in receiving the evidence offered on the part of the plaintiffs, to show the annual value of the land; and in instructing the jury, that if any part of the purchase money remained unpaid, they might apply the rents and profits of the land towards the extinguishment of it.

The court erred in refusing to permit the defendant to prove

the value of the improvements made by him upon the land; so that the same might be deducted first out of the rents and profits, derived by him from the enjoyment of the land. And to show that a claim to the mesne profits is subject to such deduction, they cited *Marie* v. *Semple*, (*Addis.* 215); *Jackson* v. *Lomis*, (4 *Cowen* 168); *Hylton* v. *Brown*, (2 *Wash. Cir. Ct. Rep.* 165); 8 *Wheat.* 81.

*Church*, for the defendants in error, said that the grandfather being the vendor of the ancestor of the defendants, and the plaintiff in error being at most only the assignee of the grandfather's or vendor's rights, and having taken the possession of the land from the defendants in error, if any purchase money was due from the latter to the grandfather or his assignee, at the time they took possession of the land, they might be regarded in the light of mortgagees in possession, receiving the rents and profits of the land, for the purpose of discharging the debt, still owing on account of the purchase money; and as such, were properly chargeable with the rents and profits of the land. For this purpose the evidence offered in the court below, on their part, and objected to by the plaintiff in error, was properly received. And the charge of the court to the jury, on this point, was also correct for the same reason. 3 *Powell on Mortg.* 946, 947, 948, 949; *Moore* v. *Cable*, (1 *Johns. Ch. Rep.* 385); *Givens* v. *M'Calmont*, (4 *Watts* 462).

The grandfather and the plaintiff in error having obtained the possession by colluding with the tenant of the defendants in error, could not maintain that possession against the defendants in error, though the purchase money was not all paid by them or their ancestor, the vendee. *Harris* v. *Bell*, (10 *Serg. & Rawle* 39); *Smith* v. *Patton*, (1 *Serg. & Rawle* 80).

The evidence offered by the plaintiff in error of the value of the improvements made by him on the land, was properly rejected. *Hoover* v. *Gonzalus*, (11 *Serg. & Rawle* 315).

The opinion of the Court was delivered by
KENNEDY, J.—That the father of the plaintiff in error made a parol agreement with the father of the defendants in error, for the sale of the land in question, and that such agreement was executed in part, so as to take the case out of the Act of Assembly against frauds and perjuries, are propositions which must be taken as true and undeniable, seeing the jury, by their verdict, have found them to be so, under a charge from the court that has not been excepted to, in this respect at least, by the plaintiff in error. The questions growing out of the first and third errors assigned, are the same, and two in number, and will therefore be considered together.

The *first* is: If a vendor of land or real estate, after having put the vendee in possession of it, agreeably to the terms of the sale, and having received part of the purchase money, takes possession of it again, and uses it without the consent of the vendee or his

[Wykoff v. Wykoff.]

heirs, is he or his assignee, to whom he has sold the land a second time, not chargeable with the rents, issues and profits thereof, in an action of ejectment, brought against either, for the recovery of the possession of the land, by the first vendee or his heirs, as long as they hold and use the same, to be applied towards satisfying any balance that may remain unpaid of the purchase money, so far as the profits may be requisite for that purpose, when sufficient to answer it?

And *secondly* : Is it requisite in such case, where the possession is obtained by the vendor by means of collusion with the tenant of the first vendee or his heirs, to make a tender of the residue of the purchase money, before the institution of the ejectment by the latter, to entitle them to recover the possession? This latter question seems to be settled by the decision of this court in *Harris* v. *Bell*, (10 *Serg. & Rawle* 39), in the negative; and so the court below instructed the jury.

Then, as to the *first* question, it seems difficult, upon equitable principles, at least, to raise even a plausible objection to the vendor or his assignee being charged with the mesne profits, in order to extinguish, when they are sufficient for that purpose, all further claim to holding the possession of the land. The vendor, in such case, when he retook the possession of the land, had no right whatever, in an equitable point of view, to do so, further than to secure himself in the receipt of the residue of the purchase money; and having received it by an appropriation of the rents, issues and profits of the land to his own use, it would be highly inequitable and unjust that he should be permitted to withhold the possession thereof, after that, from his vendee or his heirs. The vendor is deemed in equity a trustee for the vendee of the estate. 2 *Story's Eq.* 458, 459, *pl.* 1212. And if he takes possession of it, it is too well settled to admit of doubt, that he is bound to account for the profits received from the same. Indeed, it would be most flagrantly unjust if it were not so.

The evidence, therefore, proving the annual value of the land, or the amount of the rents, issues and profits thereof, was properly admitted, in order to show, that by the receipt of the same, the plaintiff in error and his father had been satisfied for any residue of the purchase money remaining unpaid and due from the defendants in error, upon the purchase of their father, at the time the plaintiff in error's father retook the possession of the land. And as the jury found a verdict in favour of the defendants in error, it must be taken that the whole of the purchase money was by these and other means paid and satisfied, and hence nothing remained to make a tender of; or else they must have found that the grandfather re-obtained the possession by improper means; and if so, no tender was necessary before instituting this action. In either aspect, the plaintiff in error has therefore no reason to complain.

[Wykoff v. Wykoff.]

In regard to the *second* error, we think the evidence offered by the plaintiff in error to prove the value of his improvements, was rightly rejected by the court. They were not such as were necessary to the occupation and profitable enjoyment of the land: and hence to allow for such improvements, made by a person standing in the character of a trustee, as the plaintiff in error and his father did, might be in effect to permit the *cestui que trust* to be improved out of all claim to the land.

Judgment affirmed.