# Eberly *versus* Lehman, et al.

1. There may be such part performance of a parol contract for the sale of land, as will take it out of the statute of frauds without part payment of the purchase-money.

2. A. agreed, by parol, to sell a certain lot of ground to B., who was to give his note for the purchase-money on delivery of the deed to him.    B. took possession of the lot, and with A.'s assent, erected a house and improvements thereon.    A. never delivered the deed, nor did B. give his note or pay any part of the purchase-money.    A. subsequently sold the lot to C., who, with full knowledge of the circumstances, paid the purchase-money and received a deed for the premises.    In an action of ejectment against C. by a purchaser of B.'s interest, at a sheriff's sale, *Held*, that there had been such part performance of the contract by B., as could not be reasonably compensated in damages, and which, therefore, took the contract out of the statute of frauds. *Held*, therefore, that the plaintiff was entitled to judgment.

3. In the above case it was not necessary for the plaintiff to tender the purchase-money of the land before suit brought.    It was sufficient for him to make such tender together with interest and costs of suit on the trial of the cause.

May 10th 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Cumberland county :*    Of July Term 1882, No. 22.

Ejectment, by Levi F. Eberly against J. C. Lehman and Daniel Day, to recover a lot of ground in Boiling Springs, Cumberland county, with notice of claims for mesne profits.

[Eberly *v.* Lehman.]

. On the trial, before HERMAN, P. J., the following facts appeared:—In the winter of 1873, D. W. L. Nerons agreed by parol with Henry Mower to purchase from him a certain lot of ground. The land was clearly designated, the consideration ($180) agreed upon, and the possession delivered to Nerons, who, by the agreement, was to have his own time to pay for the lot, and to give his note for the purchase money upon the delivery of the deed. The deed, however, was never tendered to him, nor was the note demanded or the purchase money paid. Immediately upon taking possession, Nerons erected a building upon the land, expending $300 of his own money, and contracted a debt to Eberly for material used in said building. In 1874, one year after the building was erected, Eberly entered a mechanics' lien against it, and in 1875, Nerons confessed a judgment to him on a scire facias issued on this mechanics' lien.

In the same year, the lot was sold by Mower to Lehman, who knew of the contract with Nerons, and upon the execution of a deed to Lehman, he paid the purchase money, $224. In 1876, the lot was sold by the sheriff, under an execution issued on Eberly's judgment, and Eberly, who was the purchaser at this sale, brought this suit.

At the trial, the plaintiff tendered to the defendants the sum which Nerons was to pay for the lot, with interest and costs of suit, and demanded a deed from defendants, but the defendants refused to accept the tender.

The court ordered a compulsory nonsuit to be entered, on the ground that Eberly's claim, being through Nerons, could not be enforced, since Nerons, having paid no part of the purchase money, had never acquired any right to the specific performance of the contract. The court subsequently refused to take off the nonsuit, whereupon Eberly took this writ, assigning for error the action of the court in entering the judgment of nonsuit, and refusing to take it off.

*H. Newsham* (with him *W. F. Sadler*), for plaintiff in error. The possession of the land by Nerons, with the consent of Mower, and the expenditure of money, and the contraction of a debt for lumber to build the house, gave such an equitable estate to Nerons as would entitle him to specific performance at any time after he came into possession, and the lien entered by Eberly would bind that interest to the extent of the debt, subject to the equities of Mower, that could be enforced at any time. Payment of the purchase money by Nerons was not essential under these circumstances: Pugh *v.* Good, 3 W. & S. 56; Jones *v.* Peterman, 3 S. & R. 549; McGibbeny *v.* Burmaster, 53 Pa. St. 332; Hill *v.* Meyers, 43 Pa. St. 172. Nerons acquired an equitable estate under his contract: Hart *v.* Carroll,

4 Norris 512, and to this estate Eberly's lien attached: Cark-huff *v.* Anderson, 3 Binney 11; Lyon *v.* McGuffey, 4 Barr 126.

*S. Hepburn, Jr.*, for defendants in error.—Nerons abandoned his contract. He neither paid nor tendered any purchase money, but attorned to Lehman, first paying him rent and then surrendering possession to him. It is well settled in this state, since Moore *v.* Small, 7 Harris 461, that every contract for the sale of land is within the statute of frauds, except where there has been such part performance as cannot be reasonably compensated in damages. The improvements in this instance were not of such a character: Dougan *v.* Blocher, 12 Harris 28; Hill *v.* Meyers, 7 Wr. 170; Ballard *v.* Ward, 8 Nor. 358. Pugh *v.* Good, and Jones *v.* Peterman, cited by plaintiff in error, were overruled, in Moore *v.* Small, supra. Without part payment of purchase money, there can be no "part performance" by the vendee, and for this reason no case can be found of a recovery without such part payment.

Mr. Justice MERCUR delivered the opinion of the court October 4th, 1882.

Although the earlier decisions do not harmonize with each other yet it is now undoubtedly held, that all parol contracts for the sale of lands are not invalidated by the statute of frauds. Where possession has been taken in pursuance of the contract, and there has been such part performance that the purchaser cannot reasonably be compensated in damages, the case is taken out of the statute. Possession and payment of purchase money only are not sufficient, for the vendee may be compensated in damages; but when to possession is added permanent improvements of considerable value which cannot be thus reasonably compensated, the rule is held otherwise. This constitutes such a part performance as to take the case out of the statute: McGibbeny *v.* Burmaster, 3 P. F. Smith 332.

This action is for a lot which the evidence shows Nerons bought of Mower by a parol contract. He took possession in pursuance of his purchase, and made valuable improvements on the lot. The plaintiff claims as a purchaser at sheriff's sale on a judgment entered against Nerons after the improvements were made; and the defendant claims by deed from Mower some time thereafter. The controlling question is whether Nerons had such an interest in the lot as to be bound by the judgment against him? The learned judge thought he had not, and ordered a compulsory nonsuit. If we correctly understand the court, this conclusion was based solely on the fact that Nerons had not paid any part of the consideration

money to Mower. In the opinion filed, inter alia, it said, "it may be assumed that the contract for the sale of the land by Mower to Nerons has been fully proved by the testimony of Nerons, the vendee, and the deposition of Mower, the vendor. The land, according to their testimony, was clearly designated and described, the consideration agreed upon and possession delivered to the vendee. The vendee erected a building on the land, the materials for which were furnished by Eberly, who entered a mechanic's lien against the building, making Nerons alone the defendant therein." In the continued narative it is stated that the mechanic's lien was not filed until a year after the building was erected: but the decision does not appear to rest on the ground that the lien was not filed in time. It declares that at no time had Nerons any estate in the land, and therefore the judgment which he confessed on the scire facias on the mechanic's claim attached to nothing.

This view does not give due effect to the equity in Nerons arising from his expenditure, which more than doubled the permanent value of the land: Wack v. Sorber, 2 Whart. 387. When a party has induced another on the faith of his promise, though verbal, to expend his cash or labor for which he can only be remunerated by the enjoyment of the thing so promised, equity will compel the promisor to give such deed or writing, as will secure the promisee's perfect enjoyment of the thing promised: McKellip v. McIlhenny, 4 Watts 322. In Pennsylvania ejectment is substituted for a bill in equity: Peebles v. Reading, 8 S. & R. 484. When brought to enforce specific performance of a purchase it is subject to all the considerations that would affect a bill for that purpose in the contemplation of a chancellor: Brawdy v. Brawdy, 7 Barr 158. It will lie to enforce execution of articles of agreement on the part of a vendee who has never been in possession: Tyson v. Passmore, 2 Id. 122.

It is true a plaintiff who claims under an equitable title must do equity before he can recover. What is equity in a particular case depends on the contract invoked, and the equities arising under it.

Both parties to this contract swear the sum to be paid by the vendee was $180, that no specific day for payment was named, but the vendee was to have ample time to make payments to suit his convenience. Nerons testifies that when the contract was made, Mower told him to go immediately and take possession, to get his lumber and build his house; that he was not to give any note until he received the deed, and Mower said he had no blank deeds in his possession, but was going to town the next day. He further testifies that he took possession and expended $300 in money on the property. It does not appear

[Eberly *v.* Lehman.]

that Mower ever tendered a deed to Nerons or demanded payment of the purchase money.

Mower testifies that Lehman proposed to pay him the purchase money if he would make a deed to Nerons; that he so made the deed; before it was delivered Lehman changed his mind and desired it to be made to himself. He then made it to Lehman on his paying $200 and interest. This was more than two years after the erection of the house. He further testifies it was distinctly understood, that this sale was of the lot only, and not of the improvements; that he said to Lehman, he would like to see Eberly paid for the lumber which he had put in the house, and Lehman replied he would pay him a just price therefor. Thus the evidence of Mower is not only that Lehman bought with full knowledge of Nerons' equitable interest and of the plaintiff's claim for lumber, used in the house; but he also knew the intention of Mower was to convey to him the legal title only.

The mechanic's lien was filed on the 4th of April, 1874. The judgment thereon was confessed, and the deed to Lehman was executed, in 1875. Which was first in time, the record fails to disclose. Nerons was in possession when he confessed the judgment. It then became a lien on all his equitable interest in the lot. He continued in possession. The evidence does not show any act of his intended to affect his equitable title until April 1876. Then he rented the premises of Lehman for one year.

At that time, he was powerless, by any arrangement he could make, to divest the lien of the judgment, which had attached to his interest in the property.

When the plaintiff relies on an equitable title, tender of the money due must generally precede the action, yet the rule has its exceptions. It does not apply when the vendor, before payment, has put the vendee into possession under the contract, and induced him to make valuable improvements, and afterward, by collusion or other unfair practice, regains the possession: Harris *v.* Bell, 10 S. & R. 39; Dixon *v.* Oliver, 5 Watts 509; Gregg *v.* Patterson, 9 Id. 208; Wykoff *v.* Wykoff, 3 W. & S. 481; D'Arras *v.* Keyser, 2 Casey 249.

The large expenditure made by Nerons created an equity which gave him a substantial interest in the lot. His vendor at all times recognized and admitted his equitable estate. After the lien of the judgment had attached thereto, no arrangement between Nerons and Lehman could divest it. The purchaser, under that judgment acquired all the interest and right of possession which Nerons had at the rendition of the judgment. There had been no abandonment of the equity, nor undue delay under the evidence, in fulfilling the contract. On the trial, the

plaintiff, in open court, tendered to the defendant the sum which Nerons was to pay, with interest, and the costs of the suit; but the defendant refused to accept it. The learned judge erred in awarding a compulsory nonsuit.

　　　　　Judgment reversed, and a procedendo awarded.