Judgment reversed, and <em>venire de novo</em><br>awarded.

## McGrew et al., *versus* Foster.

1. A vendee of timber land, under a contract, without covenant on part of the vendor to deliver possession to the vendee, who cut timber but never went into possession of it by residence or cultivation, and paid but part of the purchase money therefor, cannot maintain an action · of trespass against his vendor or those claiming under him, for cutting

and removing timber without tendering the balance of the purchase money before suit brought, and maintaining that tender by producing the money in court.

2. A vendee of timber land, under an unrecorded contract, who has paid but part of the purchase money, twenty-seven years overdue, and who has not for nearly thirty years asserted any right or claim on the same, but allowed it to remain unoccupied and unimproved, has been guilty of such laches and inexcusable negligence, as to prevent his maintaining an action of trespass against one holding a legal title to it mediately from the vendor by recorded conveyance.

March 12th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas of *Warren county:* Of January Term 1885, No. 471.

This was an action of trespass brought June 12th, 1883, by A. J. Foster against James McGrew, W. Rogers, James Kent, James Travis, Daniel Crandall and Smith Brown for breaking and entering the plaintiff's close, and cutting, carrying away, and converting his timber trees, wherein he sought to recover double the value of the trees cut down, and treble the value of those converted to the use of the defendants, under the Act of 29th March, 1824. Plea, not guilty.

The timber was cut and carried away by James McGrew in June 1883. The other defendants were his employés in cutting the timber.

The facts as they appeared on the trial before BROWN, P. J., are sufficiently given in the opinion of the Supreme Court.

The Court directed the jury to find for the plaintiff. By agreement of parties the damages were fixed at $116, single damages.

Verdict for the plaintiff in the sum of $116, and judgment thereon, whereupon the defendants took this writ and assigned for error the direction of the jury to find for the plaintiff.

*D. I. Ball* and *A. H. Noyes,* (*C. C. Thompson* with them,) for plaintiff in error.—The plaintiff can not maintain his action of trespass. Before he could have brought and maintained an action of ejectment against the owner of the legal title, he must have paid or tendered the purchase money: Gore *v.* Kenney, 10 Watts, 139; Vincent *v.* Hoff, 4 S. &. W., 297; Brindle *v.* McIlvane, 7 S. & R., 345.

The contract under which he claims gave him no right to the possession. In 1 Sugden on Vendors, page 270, note *b*, it is said that where the contract is silent as to possession, the vendor retains it until payment of the purchase money, citing Irvin *v.* Bleakly, 67 Pa. St., 28; Smith *v.* Patton, 1 S. & R.,

84; Baum *v.* Dubois, 43 Pa. St., 260. In the former case THOMPSON, C. J., lays down the rule as above.

In Weakland *v.* Hoffman, 14 Wr., 517, AGNEW, J. says, " As a general rule, a contract to sell does not, *ipso facto*, carry a right of possession until conveyance, in the absence of a covenant to let the party into possession. It is very common, it is true, to let the purchaser in upon a sale, but we know of no rule of law, by which the possession, so *important* a security to the rights of the vendor, shall pass from him without his covenant or his consent."

The vendor had a right to enter the premises, when the vendee was in default and refused to perform his contract, even if the latter had been given a right of possession, if the former could make such entry peaceably: Welch *v.* Emerson, 14 Nor., 257 ; Bell *v.* Clark, 1 Amerman, 92.

Having the legal title, and the rights of entry and possession of the premises, the defendants were not trespassers in making their entry thereon. Where the right to enter upon the land of another exists, the abuse of it will not sustain an action of trespass. The remedy is case : Edelman *v.* Yeakel, 3 Casey, 26.

To maintain trespass, there must be in the plaintiff either actual possession, or the right to immediate possession flowing from the right of property ; and he must have been deprived of it by the tortious act of another : Weitzel *v.* Marr, 10 Wr., 463 : Waldron *v.* Haupt, 2 Sm., 409 ; Rifener *v.* Bowman, 3 Sm., 313.

It is seemingly beyond controversy that the evidence does not exhibit any such rights in the plaintiff.

Another reason, fatal to the plaintiff's right to recover, is the staleness of his claim. The contract under which he claims is dated the 10th of April, 1854. This suit was begun on the 12th of June, 1883. Between these two dates not one cent was paid upon the purchase money.

If a plaintiff in ejectment asks for specific execution of a contract for the sale of land, he cannot recover, if it appear that he has been guilty of laches and such conduct as was calculated to induce the other party to suppose that he has abandoned his contract; and especially if he had permitted so long a time to elapse as that a legal title would be barred by the Act of Limitations. And see generally upon stale claims : Zeigler *v.* Houtz, 1 W. & S., 533; Patterson *v.* Martz, 8 Watts, 374; Callen *v.* Ferguson, 5 Casey, 247; Wengert *v.* Zimmerman, 9 Casey, 508; DuBois *v.* Baum, 10 Wr., 537; Miller *v.* Henlan, 1 Sm., 265; Cadwalader's Appeal, 7 Sm., 158; Dohnert's Appeal, 14 Sm., 311; Russell *v.* Baughman, 13 Nor., 400.

[McGrew et al. v. Foster.]

In equity courts twenty years is a positive bar to any claim: Bull v. Towson, 4 W. & S., 557.

*Wilber* and *Brown*, (*Schnur* with them,) for defendant in error.—The plaintiff could maintain his action without tendering the balance of the purchase money.

The last instalment on Ward's articles fell due April 10th, 1856. By statute passed April 27th, 1855, sec. 7, Purdon's Digest, 922 pl. 11, it is enacted that, " In all cases where no payment, claim or demand shall have been made, on account of or for any . . . . . charge upon real estate for 21 years, and no declarations or acknowledgment of the existence thereof shall have been made within that period by the owner of the premises subject to such . . . . . charge, a release or extinguishment thereof shall be presumed, and such . . . . . charge shall thereafter be irrecoverable:" Pratt v. Eby, 17 P. F. S., 402.

This Act is retrospective as well as prospective in its operation: Knor v. Browne, 64 P. S. R., 56–7.

There is no positive evidence of any payment of the purchase money on the articles, except the $25 by Ward at the date of the execution, but the law presumes that it was extinguished in some way, and the whole purchase money paid. Foster could therefore bring his action of ejectment without a previous tender of purchase money: Brewer et al. v. Fleming, 1 P. F. S., 103; Longwell v. Reutter, 11 Harris, 102; Siter, James & Co's. Appeal, 2 Casey, 180; Morgan v. Scott, 2 Casey, 51.

The vendee under a contract is to every intent and purpose the owner of the land: Weed v. Hall, 5 Out., 596; Baker v. King, 6 Harris, 144.

The last instalment of purchase money was due Ansel St. John, April 10th, 1856. May 7th, 1855, he conveyed this land by deed to Thomas P. St. John, and thus put it out of his power to perform his contract and make title when the last instalment fell due, and was not in a position to call for specific performance on his part: Railroad Co. v. Gourley, 3 Out., 176. St. John's only remedy after this conveyance was to sue on the articles for the purchase money, and tender a deed in accordance with his covenants, Nicoll v. Carr, 11 Casey, 381.

" A party calling for performance makes performance, or tender of performance on his part a condition precedent:" Ong v. Campbell, 6 Watts, 397; Moroney v. Townsend, 5 Phil., 357.

The whole matter depends on each case and its equities, and " rests in the sound discretion of the chancellor " under the particular circumstances: Freetly v. Barnhart, 1 P. F. S., 279·

Morgan *v.* Scott, 2 Casey, 51; Haverstick *v.* Erie Gas Co., 5 Casey, 254; McLaughlin *v.* Shields, 2 Jones, 290; Remington *v.* Irving, 2 Harris, 143; Decamp *v.* Feay, 5 S. & R., 325; Tierman *et al. v.* Roland, 3 Harris, 429.

Mr. Justice CLARK delivered the opinion of the Court, October 4th, 1886.

The facts in this case are not disputed; the title to the fifty acres of land, from which the timber in controversy was cut, was originally in E. J. Pettibone, who, 15th August, 1846, conveyed the same with other lands to Ansel St. John. The plaintiff below claimed title under an unrecorded contract in writing, dated 10th April, 1854, between Ansel St. John (executed by his attorney, in fact, Lansing Wetmore) and Samuel Ward, by the terms of which St. John, in consideration of the sum of one hundred dollars, agreed to sell and convey to Ward the premises now in question. The purchase money was payable, twenty-five dollars in hand, and seventy-five dollars in two equal annual instalments with interest; the deed to be delivered, free from incumbrance, upon payment of the purchase money. The hand money was paid at the execution of the contract, but the residue of the purchase money still remains unpaid. After his purchase, Ward had a trial survey made to ascertain the lines approximately; a re-survey, however, by a regular surveyor was contemplated. He cut some timber, but never went into the actual possession by residence or cultivation. On 28th March, 1865, Samuel Ward assigned his interest to Archibald Ward, who, 8th April, 1867, assigned the same interest to A. J. Foster, the plaintiff below.

The defendants claimed title through a series of recorded conveyances, embracing, with other tracts, the lands in dispute in part, as follows: Ansel St. John and wife to Thomas P. St. John, dated 7th May, 1855, recorded 6th June, 1855; Thomas P. St. John and wife to Samuel Lilly, dated 23d August, 1859, recorded 28th September, 1859; Samuel Lilly and wife to A. H. Ludlow, William Martin and Adna Sawyer, dated 7th December, 1859, recorded 14th March, 1860. In the deed last recited, after the description of the several tracts embraced therein, is contained a clause as follows: "Also all contracts and articles of agreement for the purchase of said tracts, and all balances due and unpaid on any contracts and articles of agreement made by Lansing Wetmore for the sale of any portion of the above described tracts of land. It being the true intent and meaning of these presents to convey to the said party of the second part all the right, title and interest of, in, and to the above described premises, which was conveyed to

Samuel Lilly by Thomas P. St. John, by deed dated August 24th, 1859."

By various conveyances in due form and duly recorded, the title of Ludlow and Martin to the 400 acres of tract No. 223, described in the deed from Ansel St. John, became vested in the Great National Petroleum Company, and the title of Adna Sawyer in the same tract became vested in James McGrew. Each of these deeds recited a consideration, and acknowledged the receipt thereof."

The plaintiffs in error, who were the defendants below, contend, first, that Thomas P. St. John and Samuel Lilly, under whom they claim, were *bona fide* purchasers for value, and that they are therefore not affected by the unrecorded contract of 10th April, 1854; that the clause above quoted from the deed of Samuel Lilly to Ludlow, Martin and Sawyer, is not a reservation or exception of the fifty acres from the grant, contained in the deed, nor was it notice to subsequent purchasers, of the contract with Ward upon which the plaintiff relies; and, second, that, in any event, before the plaintiffs could bring and maintain this action, he must have paid or tendered the purchase money; that, standing upon the terms of his contract, he would be met at the threshold with his own default.

It is not necessary for us to consider the first ground of this contention, as the second, in our opinion, is certainly decisive of the case.

In Minster *v.* Morrison, 2 Yeates, 346, the general rule was declared, that a purchaser of lands, who seeks redress under his articles, must bring his money into court in order to show his readiness to perform his contract. This case was recognized and followed in Gore *v.* Kinney, 10 Watts, 139, an ejectment brought by an equitable vendee against the vendor; it was there held that the plaintiff must not only tender the money due and unpaid, before suit brought, but he must have it in court, ready to be paid to the defendant, in case of a verdict for the plaintiff: Youst *v.* Martin, 3 S. & R., 432; Peebles *v.* Reading, 8 S. & R., 496, and Moody *v.* Vandyke, 4 Binney 41, are cited as authority for the doctrine thus stated.

So in D'Arras *v.* Keyser, 2 Casey, 252, Mr. Justice WOOD-WARD, referring with approval to Gore *v.* Kinney, *supra*, says: "There can be no question about the soundness of the principle that, in an equitable action of ejectment, the plaintiff, to be entitled to recover, must not only tender the money before suit brought, but must also have it in court ready to be paid in the event of a verdict in his favor." This rule, as stated, is restricted in its application, however, to cases where the

defendant's possession is a lawful one, for, in the case last cited, it was held, that if the vendee is once fairly in possession of the land under articles of purchase, and is ousted by fraud, force or other illegal means, he is entitled to recover in ejectment, without bringing the money into court.

So in Eberly *v.* Lehman, 4 Out., 542, it was said, that the rule did not apply when the vendor, before payment, has put the vendee into possession under the contract, and induced him to make valuable improvements, and afterward by collusion or other unfair practice, regained the possession; (citing Harris *v.* Bell, 10 S. & R., 39; Dixon *v.* Oliver, 5 Watts, 509; Gregg *v.* Patterson, 9 Id., 208; Wykoff *v.* Wykoff, 3 W. & S., 481; D'Arras *v.* Keyser, 2 Casey, 249.) To the same effect are Heft *v.* McGill, 3 Pa. St., 256; Brewer *v.* Fleming, 1 P. F. S., 102; Chase *v.* Irwin, 6 Norris, 290.

Similar in some respects, to the case under consideration, is the very recent case of Bell *v.* Clark, 1 Amerman, 92. Bell, by articles dated July 1st, 1870, agreed with Adaline Clark, on payment of $732.48 within two years, to convey certain lands to her, of which in the meantime she was to have possession. This possession she took and maintained until within four years before suit brought, but paid no purchase money. Bell, finding the premises vacated, entered into the possession, wherefore Mrs. Clark brought ejectment. Mr. Justice GORDON, delivering the opinion of the Court, says: "Under these circumstances, it cannot be said that in thus resuming dominion over the property, the vendor was guilty of either a fraudulent or unlawful act." "The rule may be stated thus: where the possession of the vendor is lawful, his vendee cannot maintain ejectment against him, without proof of previous tender of the purchase money, and he must also maintain that tender, by producing the money in court."

In the case at bar, there is no express covenant on part of the vendor to deliver the possession to the vendee. "As a general rule," says AGNEW, J., in Weakland *v.* Hoffman, 14 Wr., 517, a contract to sell does not, *ipso facto*, carry a right of possession until conveyance, in the absence of a covenant, to let the party into possession. It is very common, it is true, to let the purchaser in upon a sale, but we know of no rule of law by which the possession, so important a security to the rights of the vendor, shall pass from him without his covenant or his consent." See also Smith *v.* Patton, 1 S. & R., 84; Baum *v.* Dubois, 7 Wright, 260; Irwin *v.* Bleakly, 17 P. F. S., 28.

Nor is there any evidence that actual possession was at any time taken, under or in pursuance of the contract. It appears that after his purchase Ward made a trial survey, to ascertain the probable boundaries of his purchase, and cut some timber;

whether these acts were known or approved by St. John does not appear. It is clear, however, that Ward never assumed the actual possession of the land. A mere temporary occupancy for the purpose of making a survey or taking off timber, by one having no right of possession, is not such an actual occupancy as defeats the constructive possession, which the law casts upon the owner: Harlan *v.* Harlan, 3 Harris, 507; Brewer *v.* Fleming, 1 P. F. S., 115.

The defendant was the legal owner of the land, and as he had not conveyed or yielded the possession to any other person, he was at all times constructively in the possession, under his title; he had a right at any time to enter and occupy the land, subject of course to the equity of the vendee, to whom for any injury to the freehold, he might under some circumstances be answerable; not as a trespasser, but in another form of proceeding: Edelman *v.* Yeakel, 3 Casey, 26.

To maintain trespass, the plaintiff must either have actual possession or the immediate right to it, flowing from the right of property, and it is plain that he had neither. It is not pretended that he was at any time in the actual occupancy of the land, and he could only be entitled to that right, upon the footing of a specific performance of his contract. The contract of purchase was made in the year 1854, at which time only twenty-five dollars of the purchase money was paid; no part of the residue has ever been paid, or offered to be paid; almost thirty years had elapsed before the alleged trespass was committed; during all that time the land remained unoccupied and unimproved, and since 1867 until the bringing of this suit, no act appears to have been done or words spoken in assertion of the plaintiff's right. Prior to that time the lands were, to some extent, stripped of the timber, yet the unpaid purchase money, by the interest since accrued, has tripled in amount. Under such circumstances, the vendor might well suppose the contract to have been abandoned, and a chancellor would certainly hesitate to decree a specific performance.

A vendee, by articles, cannot experiment with his purchase; he will not be allowed to pursue a course of conduct calculated to mislead the vendor into the belief that the contract is abandoned, and when the development of the resources of the country makes it his interest to demand performance. Lapse of time, change of circumstances, and indifference on the part of a vendee of land, are circumstances to induce a chancellor to refuse a decree of specific performance: Patterson *v.* Martz, 8 Watts, 374. "If a party seeking a specific execution has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part; or if, in the intermediate period, there has arisen a material change of circum-

[McGrew et al. *v.* Foster.]

stances affecting the rights, interests and obligations of the parties, a court of equity will refuse to decree a specific performance." This rule is held with more strictness against a party out of possession : Russell *v.* Baughman, 13 Norris, 400. Specific performance is within the sound discretion of the chancellor; there must be no default in the plaintiff, which would render performance inequitable.

The plaintiff's claim under his contract has been too long neglected ; it has by this neglect lost its vitality, and become stale ; it cannot now, after this great lapse of time, be resurrected, to harass the title of the legal holder.

We are of opinion that the plaintiff has no case, and the judgment is therefore reversed.