## Birdie Doran, et al., v. Lanson D. Miller, et al.

### Gen. No. 12,161.

1. PLEDGE—*when wife not estopped to deny validity of, made by her husband.* Held, from the evidence in this case, that the owner of stock, being the wife of the pledgor thereof, was not estopped to deny the authority of such pledgor to make the pledge in question.

Bill to compel transfer of stock. Error to the Circuit Court of Cook County; the Hon. EDWARD O. BROWN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Reversed and remanded. Opinion filed February 20, 1906.

T. F. LARAMIE and WOLFF & ROTHSCHILD, for plaintiff in error, Birdie Doran.

GEORGE S. BAKER and E. J. BATTEN, for defendants in error.

MR. JUSTICE BAKER delivered the opinion of the court.

Defendants in error filed in the Circuit Court a bill in equity against Birdie Doran, the United States Steel Corporation, and the Hudson Trust Company, the transfer agent of said corporation, alleging that the complainants were the owners of the following certificates of stock of said corporation, to-wit: certificate F.5562 for 50 shares of the common stock; certificate F.2224 for 50 shares of the common stock; certificate C.2178 for 30 shares of the preferred stock; certificate C.56356 for 5 shares of the preferred stock; certificate C.46138 for 5 shares of the preferred stock, and praying that the title to and ownership of said certificates and the shares of stock represented thereby might be adjudged to be in the complainants; that the defendant Birdie Doran might be restrained from interfering with the transfer of said certificates to complainants and that the other defendants, the steel corporation and its said transfer agent, be directed to transfer said certificates to complainants on the books of said corporation.

Birdie Doran filed an answer to the bill in which she alleged that she was the owner of said certificates and shares of stock; that she had never authorized any person to transfer the same to complainants; that said certificates were taken by her husband, Eugene Doran, from a place of safe keeping and delivered to complainants without her knowledge, authority or consent. The answer also contains allegations that the certificates were pledged or deposited by Eugene Doran with complainants as collateral security in certain transactions in stocks between complainants and Eugene Doran, which the answer alleges were gambling transactions. She also filed a cross-bill to which complainants filed an answer.

Upon the hearing in the Circuit Court a decree was rendered for the complainants in accordance with the prayer of the bill and dismissing for want of equity the cross-bill of Birdie Doran, and from that decree this writ of error is prosecuted.

Mr. and Mrs. Doran were married in 1895. She re-

Doran v. Miller.

ceived from her father and from a life insurance policy on his life considerable sums of money. Prior to May 1, 1902, she had from time to time bought and sold shares of stock, but had always paid in full for the shares so purchased. She kept a bank account in her own name. Her husband acted for her in making such purchases and sales. When she purchased shares her husband gave the order to a broker to buy and when the purchase was made she gave to him her check for the amount of the purchase, payable to the order of the broker, and he delivered the check and received a certificate in her name for the shares so bought. When she sold shares he gave to a broker the order to sell and when the sale was made he delivered the certificates, indorsed by her, and took from the broker a check for the proceeds of the sale, payable to her order, indorsed it in her name and deposited it in her bank to her credit, but she alone had authority to draw checks on her bank.

May 1, 1902, Mrs. Doran was the owner and holder of 110 shares of the common and 105 shares of the preferred stock of the steel corporation represented by the following certificates issued to her, in her name, and registered in the books of the corporation, viz.:

| | | | |
|---|---|---|---|
| 5562 | 50 | 2178 | 30 |
| 2224 | 50 | 56356 | 5 |
| 5562 | 10 | 46138 | 5 |
| | —— | 29105 | 15 |
| | 110 common. | 25048 | 20 |
| | | 2130 | 20 |
| | | 9853 | 10 |
| | | | —— |
| | | | 105 preferred. |

Some of these shares had been bought through firms of brokers of which complainant Miller was a member and the remainder through other brokers, but all had been bought for cash and paid for in full on the delivery of the certificates.

Mrs. Doran had a box in a safe deposit vault to which

both she and her husband had access. In this box the cer-
tificates were kept each in the envelope in which it was
when received from the broker, and on each envelope was
an indorsement of the contents thereof. When a certificate
was purchased and before it was deposited in the box it was
the custom of Mrs. Doran to indorse the certificate by sign-
ing her name below the blank assignment and power of at-
torney printed on the back of each certificate.

Stock certificates are not negotiable instruments and a
holder of an indorsed certificate can transfer to another no
greater right in nor better title to such certificate than he
himself has. But the owner of such a certificate may by his
acts and conduct in reference thereto estop himself from as-
serting that such holder was not authorized to do what he did
do with the certificate.

The first question presented in this case is whether Mrs.
Doran should by her acts and conduct with respect to the
certificates in question be held estopped in equity to deny,
as against the defendants in error, that her husband was
authorized to pledge, transfer or sell to them the certificates
in question and this is much more a question of fact than
of law.

There is no positive testimony that Mrs. Doran knew be-
fore November, 1903, that any of the said stock certificates
owned and held by her had been removed from the box in
the safe deposit vault and she and her husband testified that
said certificates were taken by him from said box and trans-
ferred to complainants without her knowledge, authority or
consent. The facts and circumstances mainly relied upon
by the defendants in error as the foundation for the estop-
pel on the part of Mrs. Doran to deny the validity of the
transfer of said shares to defendants in error, are the facts
that she indorsed said certificates by signing her name be-
low the blank assignment and power of attorney and the
same were then placed in a box to which both she and her
husband had access, and that certain checks drawn by de-
fendants in error after May 17, 1902, to her order were
indorsed by her husband in her name, deposited in her

bank to her credit and the proceeds thereof received by her, and in this connection special stress is placed upon a check for $1,000 so drawn, indorsed and deposited November 26, 1902.

1. As to the indorsement of the stock certificates. Mrs. Doran testified that her husband said to her that she had better indorse the certificates and put them away; that she had no will and her affairs could be straightened out easier in case of her death if the certificates were indorsed, and her husband testified that he told her that she always ought to sign a stock certificate as soon as she got it; that if she should die her affairs would not be so badly mixed up if her certificates were indorsed; that she could put them away in her safety deposit box and there would be no trouble, and both testified that in fact the stock certificates that she received were so indorsed before they were put in the safety deposit box.

The question is not as to the validity or force of the reason so given for indorsing the checks when they were received, but whether it was in fact the custom of Mrs. Doran to indorse such certificates before they were put away, and upon this question the facts must, we think, upon the proofs be found in favor of the contention of Mrs. Doran.

2. As to the checks. The first transaction in stocks made by Eugene Doran in his own name through defendants in error was made May 17, 1902.

Mrs. Doran testified that she authorized her husband to sell for her 10 shares of Steel preferred and 10 shares of Steel common. The books of defendants in error show that November 12, 1902, the 10 shares of preferred were sold for $826.25 net and the 10 shares of common for $361.25 net, making a total of $1,187.50. The checks drawn, indorsed and deposited up to that time were the following: July 17, 1902, $125; September 5, $137.50; October 3, $56.92, amounting in all to $319.42. Adding the check of November 26th, $1,000, and we have as the amount of the checks drawn up to and including the check for $1,000 of November 26, $1,319.42, only $131.92 in excess of the

amount of the proceeds of her stocks sold by defendants in error November 12, 1902. After November 26, 1902, defendants in error gave to Eugene Doran but two checks, one February 4, 1903, for $85, the other March 16, 1903, for $75. Eugene Doran had no regular employment between May 1, 1902, and May 1, 1903, but his wife testified that he earned money by commissions and that it was always his habit to deposit a part of his earnings in the bank, to her credit, and that she paid by checks the house bills. The amount of the checks so deposited by him after May 17, 1902, up to November 26, 1902, including said check for $1,000 deposited that day, was, as we have seen, but $131.92 in excess of the amount of the proceeds of the sales of her steel stock sold by defendants in error November 12, 1902. The checks deposited by him after November 26, 1902, amounted to $160, so that the amount of the checks deposited by Eugene Doran to the credit of his wife during the year beginning May 1, 1902, was but $291.92 in excess of the amount of the proceeds of the sales of her steel stocks sold November 12, 1902. The fact that her husband had deposited such an amount of money to her credit in various sums at different times would not, we think, be sufficient to charge Mrs. Doran with notice that he was speculating in stocks. She testified that he was making money by commissions, he lived at home with her, she paid by check the house bills and it would not require a great business in sales on commission to enable him to deposit to her credit $291.92 between July 17, 1902, and March 16, 1903.

But even if Mrs. Doran knew, or had reason to suspect, that her husband was speculating in stocks through defendants in error, that knowledge would not alone charge her with knowledge of the fact that to carry on such speculations he was taking her stocks and pledging them to the defendants as margins for his trades. The evidence as to the checks is not, in our opinion, sufficient to warrant or support the inference that Mrs. Doran knew that her husband had taken or was taking her stock certificates and

pledging them or otherwise disposing of them to the defendants in error.

It is certain that defendants in error did not rely upon Mrs. Doran's acts or conduct in reference to the checks and were not thereby misled, when they began to buy stocks for Eugene Doran upon a pledge of her stocks as a margin, for they began to make purchases for him on such margins May 17, 1902, and gave him the first check July 17, 1902.

Again it cannot, we think, be said that the defendants in error permitted Eugene Doran to speculate in stocks through them upon the pledge of his wife's stocks as margins without knowledge of her right in such stocks, or at least without knowledge of facts sufficient to put them upon inquiry as to her rights in such stocks and as to his right to pledge the same.

Between July 25, 1900, and July 16, 1901, Mrs. Doran bought and sold through firms of which defendant in error Miller was a member, shares of stock in small lots, 5, 10, 20 and in one case as many as 50 shares at a time, and, as has been said, all the stocks so bought were paid for in full on delivery. She had no transaction with them between July 29, 1901, and May 17, 1902. On that day she bought through her husband 10 shares of steel common at 40½ and paid for the same by her check for $406.25. Not only was the 10 shares of steel common paid for by her with her own check, but the defendants in error were directed to procure a new certificate for said 10 shares in the name of Birdie Doran and did procure such a certificate, which was registered in her name on the books of the corporation May 29, 1902. Yet with this knowledge defendants in error permitted Eugene Doran to buy upon said 10 shares of stock as a margin 100 shares of Can common.

It would serve no useful purpose to go into the details of the pledging by Eugene Doran to defendants in error of the other stock certificates of Mrs. Doran. The certificates so pledged were all issued to her and registered in her name on the books of the steel corporation. The evidence, we

think, shows that they were so pledged without her knowl-edge, authority or consent, and we think fails to show such facts or circumstances as in equity should estop her from asserting her rights to said stock as against the defendants in error.

This conclusion renders it unnecessary to consider the question of the legality of the transactions carried on by defendants in error for Eugene Doran.

The decree of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*