NATIONAL CITY BANK OF CHICAGO et al. v. WAGNER et al.

ROGERS v. NATIONAL CITY BANK OF CHICAGO et al.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1914. On Rehearing July 1, 1914.)

Nos. 2061, 2070.

1. CHATTEL MORTGAGES (§ 77*)—MORTGAGES (§ 86*)—VALIDITY—DURESS.

Evidence considered, and *held* not to sustain the allegation that a conveyance of property, made as security for a pre-existing debt of another, was voidable as having been procured through duress.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 149; Dec. Dig. § 77;* Mortgages, Cent. Dig. §§ 1350, 1355, 1364; Dec. Dig. § 86.*]

2. CANCELLATION OF INSTRUMENTS (§ 7*)—RIGHT TO CONTEST VALIDITY.

An executed conveyance of real or personal property, whether absolute or as collateral security for a debt, pre-existing or new, and either of the grantor or of another person, freely and voluntarily made, cannot be revoked.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 6; Dec. Dig. § 7.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MORTGAGES (§ 25*)—CONSIDERATION—PRE-EXISTING DEBT OF THIRD PERSON.

When a conveyance is in effect a mortgage to secure a prior obligation of another, no new consideration, either to the debtor or to the mortgagor, is required in order to validate the mortgage as an executed grant.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 29-42, 1364; Dec. Dig. § 25.*]

4. EVIDENCE (§ 419*)—PAROL EVIDENCE—MORTGAGES—CONSIDERATION—CONCLUSIVENESS OF RECITAL.

A recital in a mortgage of a consideration paid is not subject to contradiction for purposes of revocation, in the absence of proof of fraud or other wrongdoing.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912-1928; Dec. Dig. § 419.*]

5. MORTGAGES (§ 84*) — VALIDITY — FRAUD AND DURESS — RATIFICATION OF VOIDABLE MORTGAGE.

Complainant executed a conveyance of both real and personal property to defendant bank as security for a pre-existing indebtedness of a third person. More than a week afterward she executed a second conveyance of the same property, as security, to another creditor of the same debtor, expressly subject to the prior conveyance to the bank, the intention being, as stated therein, to convey her equity in the property after payment of the bank's claim. Held, that if, as claimed, the bank's conveyance was procured through fraud and duress it was ratified by the second conveyance with which the bank had nothing to do, and was valid.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 193; Dec. Dig. § 84.*]

6. MORTGAGES (§ 84*)—RATIFICATION OF VOIDABLE MORTGAGE—CONSIDERATION.

The ratification by the mortgagor of a mortgage previously executed requires no new consideration to render it effective.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 193; Dec. Dig. § 84.*]

7. CORPORATIONS (§ 123*)—PLEDGE OF STOCK CERTIFICATES—PLEDGEE AS BONA FIDE PURCHASER.

Stock certificates, indorsed in blank, while not strictly negotiable instruments, to some extent have the characteristics of commercial paper, in view of the general custom to treat them as such in commercial transactions, and the owner of such a certificate, who intrusts it to another, by whom, although in violation of his trust, it is sold to an innocent purchaser for value, loses his title; and under the law of Illinois, as also under the federal decisions one who takes such a certificate as collateral security for a pre-existing debt is deemed a purchaser for value, and protected as such.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507-512, 537, 539-546, 569, 618; Dec. Dig. § 123.*]

8. MORTGAGES (§ 86*)—VALIDITY—DURESS—SUIT FOR CANCELLATION—RATIFICATION—BURDEN OF PROOF.

In a suit to set aside a mortgage as having been procured by duress, proof of the subsequent voluntary execution by complainant of an instrument which operated as a ratification of such mortgage, with full knowledge of the facts, establishes the defense of ratification prima facie, and, assuming that a knowledge by complainant of the legal right to disaffirm was essential to a valid ratification, the burden of going forward with evidence to prove want of such knowledge rests on complainant.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1350; Dec. Dig. § 86.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Suit in equity by Laura G. Rogers against the National City Bank of Chicago, L. H. Grimme, Thor R. Thorsen, G. L. Wire, and E. W. Wagner and Paul Tietgens, partners as E. W. Wagner & Co. Cross-appeals by the Bank, Grimme, Thorsen, and Wire, and by complainant. Reversed on appeal of the Bank and others, and affirmed on complainants' appeal.

George T. Buckingham, of Chicago, Ill., for appellants National City Bank of Chicago and others.

Benj. C. Bachrach and A. R. Hulbert, both of Chicago, Ill., for appellant Rogers.

H. H. Barnum, of Chicago, Ill., for appellees E. W. Wagner & Co., and another.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge. These cases grow out of the remarkable career in high financing of a youth just approaching manhood, one Butler Storke. It is unnecessary to detail his swindling operations. Suffice it to say that he managed, by a series of more or less plausible misrepresentations and deceptions, to become indebted to the appellant bank in a large sum of money and also fraudulently to secure possession, under a trust receipt, of a stock certificate indorsed in blank, theretofore pledged by him with appellees Wagner and Tietgens, stockbrokers, doing business as E. W. Wagner & Co. This certificate was delivered by him on the same day, March 1, 1913, to the bank as collateral security for his then indebtedness and for future advances. The bank, through its agents, on March 3 and 4, 1913, obtained conveyances of real and personal property from appellee, Laura G. Rogers, Storke's indulgent and confiding grandmother, as security for the joint collateral 15-day note of $30,000 executed by Storke and Mrs. Rogers on March 3, 1913, and then and there delivered to the bank to cover Storke's indebtedness to it.

On March 12, 1913, appellee Rogers, at the request of Storke and one Barnum, the attorney for Wagner & Co., executed and acknowledged before a notary public at Milwaukee, Wis., her residence, and then and there delivered to Barnum the following document:

"Whereas, Butler R. Storke is indebted to E. W. Wagner and Paul Tietgens on a certain promissory note on which there remains due and unpaid the principal sum of ten thousand ($10,000.00) dollars and interest; and whereas, the said Butler R. Storke is indebted to the National City Bank of Chicago to the extent of some twenty-eight thousand ($28,000.00) dollars for which said bank holds certain bonds, stocks and other collateral; and whereas, I, the undersigned, have heretofore conveyed to the said bank certain real property at Oconomowoc, Wisconsin, and Milwaukee, Wisconsin, and Oak Park, Illinois, in order to secure the said bank against any losses on account of the said obligations of the said Butler R. Storke to the said bank and on account of certain guaranties made by him to the said bank, and have heretofore also delivered to the said bank certain personal property for the same purpose:

"Now, therefore for and in consideration of the sum of one dollar and other good and valuable considerations, the receipt whereof is hereby acknowledged,

I, the said Laura Rogers, widow, do hereby convey, grant, set over and assign unto E. W. Wagner and Paul Tietgens, all of my right, title and interest in and to all of the said real estate so conveyed by me to the said bank for the purposes aforesaid, and all of the said personal property so pledged or delivered by me to the said bank for the purposes aforesaid, and all equity which I may have in any of the said property, real or personal, so conveyed or delivered to the said bank for the purpose of securing payment of the said note to the said E. W. Wagner and Paul Tietgens, and hereby authorize and direct the said National City Bank of Chicago to convey and deliver to them any and all of said property, real or personal, or the proceeds thereof which may remain in its hands or under its control after the adjustment and satisfaction of any claims which it may have against the said Butler R. Storke, and hereby empower said bank or its officers to execute all assignments, deeds, and other papers or instruments necessary to accomplish this purpose.

"It being the intention of the undersigned to hereby convey to the said E. W. Wagner and Paul Tietgens all her right, title and interest in and to all of said property, real and personal, including the release and waiver of the right of homestead, under and by virtue of the Homestead Exemption Laws of the state of Illinois and Wisconsin.

"In witness whereof, I have hereunto set my hand and seal this 12th day of March, A. D. 1913.          Laura G. Rogers.  [Seal.]"

On April 26, 1913, Mrs. Rogers filed her petition in the District Court to set aside all of her hereinabove recited conveyances on the ground of duress, undue influence and want of consideration. Wagner and Tietgens, by answer and cross-bill, sought to recover from the bank both the stock certificate and all of the property conveyed by Mrs. Rogers. The chancellor found that the conveyances by Mrs. Rogers to the bank had been procured through fraud, duress, undue influence, and compulsion; that the instrument of March 12th was executed without any duress or threats and constituted a valid assignment to secure the indebtedness of Storke to Wagner & Co.; that although the bank was an innocent holder of the stock certificate, it had paid no new consideration therefor, either by making advances at the time of receiving it or thereafter, and thereupon decreed that the appellants in case No. 2061 should transfer the property received by them from Mrs. Rogers as well as the stock certificate to Wagner & Tietgens, to be held by them as collateral security for Storke's indebtedness in the sum of $10,000.

Mrs. Rogers, appellant in case No. 2070, contests the finding of the court, both that the instrument of March 12th was executed without duress and, inasmuch as no present consideration was paid therefor, that it constituted a valid assignment.

The bank and its officers, appellants in case No. 2061, seek to reverse the decree on the grounds: First. That the conveyances of March 3d and 4th were executed voluntarily and without any duress or wrongdoing. Second. That the instrument of March 12th was, in any event, a ratification thereof. Third. That the bank made advances after the receipt and on the faith of the stock certificate, but that even as the bona fide recipient of the certificate to secure a pre-existing debt, it is to be protected as against Wagner & Co., the defrauded pledgees thereof.

As to case No. 2070, the decree, in so far as it holds that the instrument of March 12th was executed without duress, and constituted a

valid assignment of the property therein referred to, must be affirmed for the following reasons:

[1] First. Storke was concededly indebted to Wagner & Co. in the sum of $10,000. He had swindled them out of this stock certificate, which had theretofore been given to him by his grandmother, Mrs. Rogers, to be used for the very purpose for which he deposited it with the stockbrokers. When his wrongful act was discovered, he went with the brokers' attorney, Barnum, to Milwaukee, and explained the situation to Mrs. Rogers. According to her own testimony, she clearly understood that Barnum had no connection whatsoever with the bank, and that his object was to get the equity in the property, theretofore conveyed to the bank, for his clients, Wagner & Co. No threats of any kind were used; Mrs. Rogers acted solely because of her confidence in Storke, a confidence which continued so absolute and implicit even at the time of the trial that, as she testified, she was entirely willing to risk her last dollar as surety for him. The fact that she had conveyed these properties to the bank eight or nine days earlier as collateral for Storke's indebtedness was mentioned by all parties during the interview; nothing, however, was said by any of them about duress or wrongdoing of any kind theretofore practiced upon her; she expressed no desire or intention to repudiate the original transfers; she knew that the document then executed by her specifically set out the fact of the earlier conveyances.

There is not a word of testimony to justify any inference that the mental state produced by the duress, alleged to have been practiced on behalf of the bank, continued at the later date, or that Wagner, Tietgens, or Barnum had ever had any knowledge thereof.

[2] Second. The instrument of March 12th is not a contract, but a grant, a conveyance under seal. It is elementary that an executed conveyance of real or personal property, whether absolute or as collateral security for a debt, pre-existing or new, and either of the grantor or of another person, freely and voluntarily made, cannot be revoked. If a consideration agreed to be given be not paid—if there be, not a want, but a failure of consideration—equity will, under certain circumstances, aid in a rescission of the transaction.

"While a person who signs an instrument of writing under seal is not allowed to show that it was without consideration, the rule has long prevailed that he has the right to show failure of consideration." Koster v. Welch, 57 S. C. 95, 35 S. E. 435.

[3] When the conveyance is in effect a mortgage, there must, of course, be an obligation to be secured thereby. But no new consideration, either to the debtor or to the mortgagor is required in order to validate the mortgage as an executed grant. Perkins v. Trinity Realty Co., 69 N. J. Eq. 723, 61 Atl. 167, and cases cited therein, affirmed 71 N. J. Eq. 304, 71 Atl. 1135.

[4] Payment of consideration is, moreover, recited in the document, a recital not subject to contradiction for purposes of revocation, in the absence of proof of fraud or other wrongdoing. Consideration has to do with contracts, not with executed conveyances. Equity looks behind the forms, when its aid is sought to enforce executory

rights; it does not, however, lend its assistance to revoke executed grants merely because no consideration was in fact paid therefor. Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46.

The failure to distinguish between a contract and a conveyance led to the erroneous decision in Kansas Mfg. Co. v. Gandy, 11 Neb. 448, 9 N. W. 569, 38 Am. Rep. 370, while the decree in Bell v. Bell, 133 Mo. App. 570, 113 S. W. 667, was expressly based upon the limited power of a married woman, in Missouri, to execute a mortgage to secure her husband's debts.

As to case No. 2061, the decree must be reversed, in so far as it annuls the transfers by Mrs. Rogers to the bank and in so far as it gives priority to Wagner & Co. over the bank both as to the properties conveyed by Mrs. Rogers and as to the stock certificate. But for the fact that the chancellor saw and heard the witnesses, a careful consideration of the evidence would have led us to hold that the charges of duress, fraud, compulsion, or undue influence by or on behalf of the bank had not been sustained by the preponderance of the evidence. It is unnecessary, however, to determine this, for, even if the conveyances to the bank were voidable, they were subject to ratification. Eberstein v. Willets, 134 Ill. 101, 24 N. E. 967.

[5] In our judgment, the instrument of March 12th, executed, as the chancellor found, freely and without any wrongful inducement, operated not only to convey the equity in the properties to Wagner & Co., but also to ratify the earlier conveyances to the bank and thereby to waive any right that Mrs. Rogers might have had to avoid them.

The evidence, as already stated, fails to show that on March 12th Mrs. Rogers was still subject to any wrongful influences of any kind. It demonstrates clearly that at that time she knew exactly what had been done, what the situation then was, and in what way she could carry out her controlling desire, to aid an erring grandson in paying his debts and thus in rehabilitating himself. Even if there were a presumption that a second conveyance or ratification, obtained eight days later by the same parties whose original acts produced the condition of duress, was also made under duress (Allen v. Leflore County, 78 Miss. 671, 29 South. 161; s. c., 80 Miss. 298, 31 South. 815), it could have no bearing on the present case, for neither the bank nor its agent had anything whatsoever to do with the transactions of March 12th. Mrs. Rogers testified that she knew that Barnum did not represent the bank.

If she had desired to repudiate the former conveyances, she had, at that time, the fullest opportunity to do so. She might have conveyed the property and not merely her equity therein to the stockbrokers; she might have inserted in the document an express revocation of the former grants; she might have protested verbally against the alleged wrongs. Instead of this, however, she recited in the instrument itself the fact and purpose of the conveyances to the bank, and therein and thereby expressly authorized and directed the bank to pay over to Wagner & Co. only the balance remaining after the adjustment and satisfaction of its own claims. By clearest implication, if not by express words, she thereby evidenced her intention to ratify the original conveyances to the bank.

To set aside these transfers thus confirmed by a document directed and presented to the bank in accordance with her expressed intention that it be acted upon by the bank, the burden was on the petitioner, not merely to prove duress at the time of the original conveyances, but also its continuance at the later date. The evidence, however, of complete freedom from any duress on March 12th is uncontradicted.

[6] That no consideration' was paid for the ratification either by or on behalf of the bank or by Wagner & Co. is likewise immaterial. A bilateral contract, executed by one acting without authority on behalf of another, may be ratified, "for ratification is neither a contract nor an estoppel, but a mere election." Wambaugh, 9 Harvard Law Review, 60, 65, note 1. It has been held that ratification after loss by fire is sufficient to render an insurance company liable on a policy issued without payment of the premium and on the request of an unauthorized agent. Marqusee v. Insurance Co., 198 Fed. 475, 119 C. C. A. 251. A partner is liable as an accommodation indorser if he ratifies the unauthorized act of his copartner in so signing the firm name.

"It has never been suggested that to make such a ratification effectual, an independent consideration was necessary." Commercial Bank v. Warren, 15 N. Y. 577–579.

A fortiori, a conveyance, which requires no present consideration for its validity may be so ratified. Phelps v. Pratt, 225 Ill. 85, 80 N. E. 69, 9 L. R. A. (N. S.) 945.

"To ratify a mortgage (executed under a forged power of attorney) required no new consideration from the mortgagee." Garrett v. Gonter, 42 Pa. 143, 146.

Indeed, as ratification is not a bilateral transaction, but, "though it must be evidenced by external demonstrations, is merely an act of the mind * * * (its validity) does not depend upon its being communicated." Bayley v. Bryant, 24 Pick. (Mass.) 198, 203. See, too, Parker v. Hill, 8 Metc. (Mass.) 447; Treadwell v. Davis, 34 Cal. 601, 94 Am. Dec. 770; Tucker v. Allen, 16 Kan. 312; Hall v. Vanness, 49 Pa. 457; Burt v. Quisenberry, 132 Ill. 385, 401, 24 N. E. 622.

In the Illinois case it was held that the recital by the testator in a will that in a certain deed he had imposed obligations in favor of third persons on the grantee therein amounted to a ratification of the deed, even if it had originally been obtained by the grantee's undue influence. There is no essential distinction in principle between the ratification of an unauthorized conveyance by one wrongfully assuming to act as an agent and one's own conveyance, obtained by the grantee's fraud or other wrongdoing. In neither case is the principal or grantor absolutely bound by the original transaction; he may repudiate it, if he so desires; he may, however, waiving the wrong, elect to abide by it, and that, too, even though the original conveyance be a forgery. Bank v. Crafts, 4 Allen (Mass.) 447.

It is unnecessary, in this case, to limit ourselves to the rule, as we conceive it to be, that relation back to the date of the original transaction is an inherent part of ratification whenever and to the

extent that ratification is permitted, for whether Mrs. Rogers is to be deemed bound from March 3d and 4th or only from March 12th, the bank is protected against her subsequent attempt to repudiate, and, by the express terms of the instrument under which Wagner and Tietgens claim an interest in the property, the bank is given priority over them.

[7] The relative rights of Wagner and Tietgens and of the bank in the stock certificate depend upon entirely different considerations from those that determine the question at issue between them and Mrs. Rogers, or between themselves as to the other property conveyed by Mrs. Rogers.

It is elementary that even a purchaser for value without notice of a stolen chattel obtains no title as against the true owner; otherwise, however, as to commercial paper negotiable by delivery, transferred before maturity. Inasmuch as stock certificates are not strictly negotiable instruments, they are, when stolen, dealt with the same as chattels and not as commercial paper. Knox v. Eden Musee Americaine Co., 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700; Doran v. Miller, 124 Ill. App. 551; Miller v. Doran, 151 Ill. App. 527, affirmed 245 Ill. 200, 91 N. E. 1039.

While therefore in the case of a theft, the courts have not given effect to the custom that exists among bankers and brokers to deal with stock certificates indorsed in blank practically as commercial paper, nevertheless they have recognized that, in certain respects, such documents, as well as bills of lading and warehouse receipts, are a species of property of a peculiar character distinguishable from ordinary chattels and, to some extent at least, to be dealt with like commercial paper.

The owner of a chattel who knowingly and intentionally hands over the possession or the custody for some specific purpose does not lose his rights therein if the bailee or custodian sells it to an innocent purchaser. The fact that he intrusts the possession to another, and the further fact that it is practically impossible for a purchaser to ascertain the falsity of the possessor's claim to ownership, do not give rise to an estoppel. The principle of caveat emptor applies. It is otherwise, however, in the case of stock certificates indorsed in blank. Even though only the bare custody thereof be intrusted to another who, in complete breach of his duty, disposes of them to an innocent purchaser, the title of the original owner is lost (National Safe Deposit v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241), and that, too, though this custody was obtained by deceit and fraudulent representations (Russell v. American Bell Telephone Co., 180 Mass. 467, 62 N. E. 751).

It is, however, urged that in these cases the purchaser paid a present consideration, that they are based on principles of equitable estoppel, and that as under an estoppel the only damages recoverable are those suffered because of reliance upon the acts or representations which give rise to the estoppel, the bank, which under the findings of the chancellor made no advances on the faith of the certificate, and therefore took it only as security for a pre-existing debt,

can have no claim thereon. Without determining whether, in fact, the bank actually advanced money on the faith of the certificate, and is therefore to that extent to be protected on principles of equitable estoppel, we are of the opinion that, even as a collateral security holder for a pre-existing debt, its claim, as a pledgee for value, has priority over that of Wagner and Tietgens.

In Rumball v. The Metropolitan Bank, 2 Q. B. Div. 194, the Court of Appeals decided in favor of the bank, which had taken stock certificate scrip solely as security for a pre-existing debt of Rumball's defrauding agent. It expressly based its decision both on principles of estoppel and because such scrip had been largely dealt in by bankers, money dealers, and members of the Stock Exchange and, through them, by the public, passing by mere delivery as negotiable instruments. And while the Supreme Court, in Deposit Co. v. Hibbs, supra, held that the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible, it also stated that:

"Stock certificates are a peculiar kind of property. Although not negotiable paper, strictly speaking, they are the basis of commercial transactions large and small, and are frequently sold in open market as negotiable securities are. In Bank v. Lanier, 11 Wall. 369, 377, 378, 20 L. Ed. 172, this court said: ' * * * Although neither in form nor character negotiable paper, they approximate to it as nearly as practicable.' * * * These principles are well known to business men and are constantly acted upon by them. This circumstance should be given due weight in determining the rights of the parties in this case."

This "due weight," in our judgment, leads to the conclusion that, in this respect, stock certificates are to be dealt with in the same way as commercial paper. By the great weight of authority at common law, both in England and the United States, and now by the Uniform Negotiable Instruments Act, in force in 46 jurisdictions, one who takes commercial paper as collateral security for a pre-existing debt is deemed to have given value. Swift v. Tyson, 16 Pet. 1. 10 L. Ed. 865; Railroad Co. v. Bank, 102 U. S. 14, 26 L. Ed. 61; Manning v. McClure, 36 Ill. 490; Illinois Negotiable Instruments Act (1907) § 25, cl. 2. Stock certificate cases decided by the state courts which decline to follow the federal rule as to negotiable commercial paper are therefore not persuasive.

In Illinois, moreover (Butters v. Haughwout, 42 Ill. 18, 89 Am. Dec. 401; Kranert v. Simon, 65 Ill. 344), contrary to the weight of authority (Bank v. Taylor, 53 Fed. 854, 4 C. C. A. 55; Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754), the pledgee of an ordinary chattel, given to secure a pre-existing debt, is protected as against a defrauded vendor thereof; a like rule prevails in the 11 jurisdictions that have adopted the Uniform Sales Act, Williston Sales, § 620.

As further evidencing the mercantile view of the character of documents such as stock certificates, bills of lading, and warehouse receipts, it may be noted that under the provisions of the Uniform Warehouse Receipts Act, in force in 30 jurisdictions, including Illinois, the Uniform Bills of Lading Act, in force in 11 jurisdictions,

including Illinois, and the Stock Certificate Act, in force in 9 jurisdictions, purchaser for value is defined as including one taking such documents as collateral for a pre-existing debt. Moreover, stock certificates and bills of lading, even though stolen, and warehouse receipts, when intrusted to another, are made fully negotiable. 34 Am. Bar Assoc. Rep. 1086–1096; 38 Am. Bar Assoc. Rep. 1029–1031; Laws of Illinois 1907, p. 477, §§ 40a, 47, 58; 5 Jones & Addington's Ill. Stat. Ann. §§ 9039, 9046, 9057; Laws of Illinois 1911, p. 227, §§ 31, 53; 2 J. & A. Ill. Stat. Ann. §§ 2196, 2218.

While Otis v. Gardner, 105 Ill. 436, may not be a direct adjudication of these questions in reference to stock certificates, inasmuch as the court based its decision, partially, at least, upon the fact that there was no limitation to the authority given to the agent in that case, clearly under Illinois law one taking stock certificates as collateral for a pre-existing debt would receive the same protection as a pledgee of commercial paper, bills of lading, warehouse receipts or ordinary chattels. As both parties are citizens of Illinois and as all the transactions in question took place in Illinois, the Illinois law should be applied, unless clearly contrary to the principles of commercial law established by the decisions of the Supreme Court of the United States. In our judgment, for the reasons heretofore stated, there is no such conflict.

On the questions involved in the appeal in case No. 2070, the decree is affirmed. On those involved in case No. 2061 the decree is reversed, and the cause remanded for further proceedings, including marshaling of the securities, not inconsistent with the views herein expressed.

### On Rehearing.

[8] In the petitions for rehearing it is now, for the first time, urged that in addition to the elements enumerated in the opinion, another essential to ratification is Mrs. Rogers' knowledge of her legal right to disaffirm the original transfers and to recover the property.

A number of cases are cited in support of this contention. Many of them will be found in the notes to 2 Pomeroy Eq. Jur. § 964. In most of them the ground of rescission was actual or constructive fraud by one occupying a fiduciary position in securing a conveyance from his beneficiary. The highest degree of fairness and good faith demanded of a fiduciary must also be exercised in respect to ratification of such transactions, even though it be obtained after the relation has been terminated, and therefore proof of the beneficiary's knowledge of his legal rights is required.

In a few cases the same rule has been applied when the original conveyance was obtained, not by fraud but by duress, and not by a fiduciary but by a stranger. In most of the cases of duress and actual undue influence, however, when no confidential relation existed, the courts, in defining the requirements of a valid ratification, do not specify knowledge of the legal right to disaffirm.

Assuming, without now deciding, that even such a ratification must be based upon an election to waive one's known legal right of repudiating the original transaction, we are nevertheless of the opin-

ion that the burden of going forward with direct evidence of such knowledge is not on the defendant but on the complainant; that proof of the voluntary execution of the ratifying document with full knowledge of the facts constituting the original duress establishes, prima facie, the defense of ratification. This is so both because common experience fairly justifies the inference of fact that such a grantor knows of his legal right to rescind a conveyance obtained by such duress as is alleged to have been exercised in this case, and particularly because the direct evidence of the grantor's actual knowledge of his legal rights is peculiarly within his exclusive control.

The record before us contains no direct proof of any kind as to Mrs. Rogers' knowledge of her legal rights. While the court would weigh such evidence, if it were in the record, in the light of all of the facts bearing on the witness' credibility, and might, therefore, under some circumstances, hold it insufficient to overcome the inference, clearly, in the absence of any direct testimony whatsoever on the subject, the court is justified, if not compelled, to find that the defense of ratification has been established.

The decree will therefore, be reversed and the cause remanded for further proceedings, including marshaling of the securities not inconsistent with the views expressed in the original opinion.