DAVIS v. FINCH.

(Circuit Court of Appeals, Second Circuit. July 7, 1916.)

No. 296.

1. CORPORATIONS ⊂⊃149—CAPITAL STOCK—NEGOTIABILITY OF CERTIFICATES—FRAUDULENT TRANSFER.

While an innocent purchaser of certificates of corporate stock from one to whom they have been intrusted indorsed in blank is protected as in case of commercial paper, he is not so protected where he purchased in bad faith, with knowledge of the actual ownership of the stock and that the agent was without authority to sell it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 539–546; Dec. Dig. ⊂⊃149.]

2. PRINCIPAL AND AGENT ⊂⊃148(4)—FRAUD OF AGENT—KNOWLEDGE OF PURCHASER.

One whose property has been disposed of through the fraud of an agent clothed with apparent title for a limited purpose need not, in order to recover for the conversion from the purchaser who bought with knowledge of the facts, tender the amount the latter paid.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 537–545; Dec. Dig. ⊂⊃148(4).]

3. TROVER AND CONVERSION ⊂⊃67—ACTION—INSTRUCTIONS.

The charge of the court in an action of conversion and the refusal of requests to charge considered, and *held* without prejudicial error.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 295–303; Dec. Dig. ⊂⊃67.]

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for Southern District of New York.

Action at law by Florence G. Finch against Jonathan R. Davis. Judgment for plaintiff, and defendant brings error. Affirmed.

Appeal by defendant (below) from a judgment entered upon verdict of a jury in favor of plaintiff (below) for the sum of $18,998.43 and costs.

The plaintiff in her first cause of action charges conversion, on January 31, 1913, of 388½ shares of stock of the Finch Manufacturing Company, a Pennsylvania corporation, which was alleged to be worth $123 a share. In her second cause of action she charges conversion, upon February 17, 1913, of 50 shares of the stock of the same corporation, and valued at the same amount. For a third cause of action she charges conversion, upon March 17, 1913, of 30 shares of stock of the same value—the total, with interest, amounting to $57,625.50.

The answer denies the conversion, the alleged value of the stock, and the ownership by the plaintiff of the stock referred to in each cause of action. The answer admits dealings by the defendant with one Mandeville Hall, into whose name the shares of stock had been transferred by the plaintiff, and the further transfer of these stocks by Hall to the defendant, but alleges that they were purchased by the defendant for value and without knowledge of any defect in title. With respect to the stock concerned in the first cause of action, the defendant also alleges that he had, at an earlier date, advanced for Hall as a loan upon the security of said stock the sum of $21,750.

A separate and distinct defense to the alleged first cause of action in the complaint sets forth (with respect to the transaction relating to the acquisition of 388½ shares of stock) that the whole block of stock had been deposited with the defendant by Hall, as security for a loan of $21,750; that thereafter, and

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

on December 23, 1913, the said Hall repaid $2,500 of this amount and received back 50 shares of that held as collateral; that on January 4, 1913, the defendant purchased 50 shares more of the stock still held as collateral for the sum of $3,750, of which sum $1,000 was paid in cash and $2,750 on account of the previous advances; that on January 14, 1913, the defendant purchased from Hall the balance of 288½ shares of the capital stock previously held as collateral for the sum of $19,906.51, by the payment of $3,236.57 in cash, and by liquidating the balance of the amount previously loaned to Hall. Further, that on September 12, 1912, a contract was made by which, upon the 22d day of October, 1912, the said Hall delivered to the defendant 50 shares of the capital stock of the Finch Company in consideration of services rendered by the defendant in aiding Hall to negotiate loars, purchase a controlling interest in the property of the Finch Company, and in disposing of the real estate of that company. The defendant alleges, as a further part of this defense, that Hall was the actual owner or had the rights of an owner in transferring these various blocks of stock and that the defendant had no knowledge of any claim in dispute of that ownership.

A separate defense to the second and third alleged causes of action is also interposed, to the effect that the defendant in these instances purchased the stock of the said Hall at the rate of $65 per share for 50 shares, on February 8, 1913 (which is the transaction set up in the second alleged cause of action), and at $62.50 for 30 shares of stock on March 6, 1913 (which is the transaction set up in the third alleged cause of action). The defendant alleges that as to these Hall exercised all the rights from which the defendant might properly infer ownership, and that the defendant had no knowledge to the contrary, and that the price paid was the fair and reasonable value of the stock.

The defendant has also interposed a second separate defense to each of the three causes of action, to the effect that the plaintiff is estopped from now setting up any claim of ownership or right to possession of the shares set forth in each of the three causes of action, in view of certain transactions between the plaintiff and the defendant, as well as between the plaintiff and Hall, by which it is alleged that the plaintiff made it possible for Hall to deceive and defraud the defendant, and that the plaintiff has made oral and written statements which she should not be allowed to contradict and by which the defendant was led to believe that Hall had authority as well as right to possession or title to the stock with which he was dealing.

The case was tried before a jury and resulted in a verdict for the plaintiff.

Isaac H. Levy, of New York City (R. B. Wood, John C. Knox, and Ben A. Matthews, all of New York City, of counsel), for plaintiff in error.

Blandy, Mooney & Shipman, of New York City (E. L. Mooney, of New York City, and Eugene M Gregory, of Newark, N. J., of counsel), for defendant in error.

Before COXE and WARD, Circuit Judges, and CHATFIELD, District Judge.

CHATFIELD, District Judge (after stating the facts as above). The trial court allowed this case to go to the jury over the objection of the defendant. In the charge the court stated the various contradictions between the statements of the plaintiff (below) and of the defendant (below) and the witnesses called in support of each, as bearing on the issue of fact.

The exception taken by the defendant to the ruling of the court in sending the case to the jury raises the same propositions which are now urged by the defendant as to the effect of the written instruments offered during the taking of testimony and the objections to parol

evidence explaining or disavowing those instruments on the part of the plaintiff. Such exceptions as were taken to the charge as made, or to the refusals to charge, were similar to those reserved upon the previous rulings of the court in these regards.

The verdict of the jury has found the controversies of fact or contradictions in statement in favor of the plaintiff, so far as these were left to the jury, and this court can therefore consider nothing but the legal propositions presented.

The plaintiff charges conversion of the various shares of stock at those times when the defendant undertook to purchase these stocks from Hall, who, according to the plaintiff's testimony, had not only defrauded and deceived her, but who had caused her to sign the instruments in evidence, as a part of his fraudulent scheme.

The plaintiff offered testimony to show that knowledge was brought home to the defendant, prior to his purchase of these shares of stock, of such a character and sufficient in amount as to apprise him of the fraud which was being perpetrated by Hall in holding himself out as owner of the stock, with the right to sell it absolutely to the defendant, and in having it transferred for any purpose except to obtain a loan for the plaintiff.

As has been stated, the verdict of the jury upon the issues of fact established this knowledge on the part of the defendant, unless the evidence which went to the jury was improperly admitted.

The plaintiff, charging conversion, with knowledge on the part of the defendant of the imperfection in Hall's possession with indorsement in blank, demanded damages from the defendant representing the value of the stock which she charged was thus wrongfully converted. She also offered evidence as to the value of the shares of stock charged to have been converted, and there seems to have been no material error in the admissions of such testimony as was allowed to go to the jury in order to reach a determination on the amount of the verdict, if a verdict for the plaintiff was first agreed upon.

The plaintiff used the testimony as to the value of the stock and the properties which it represented in further proof of her contention that the consideration paid by the defendant for the stock enabled him to obtain that stock at a price so cheap as to explain his eagerness to make the purchase and to justify the plaintiff's charge that the defendant disregarded the facts known to him and which should have put him upon his knowledge as to the defect in title of the man from whom he was making the purchase. These matters all involved questions for the jury, which have been resolved by the verdict in the plaintiff's favor.

· The defendant contends that the plaintiff, knowing that the defendant had innocently expended certain amounts in the form of loans upon the stock in question, and that these loans had been made by her agent, Hall, is estopped from charging conversion and from attacking the title of any one who was misled by Hall's possession of the certificates indorsed in blank and by the authority with which he had been clothed.

[1] The defendant contends that the certificates of stock are like negotiable paper when indorsed in blank, citing National City Bank

of Chicago v. Wagner, 216 Fed. 481, 132 C. C. A. 533. He cites Collins v. Gilbert, 94 U. S. 754, 24 L. Ed. 170, Shaw v. Railroad Co., 101 U. S. 564, 25 L. Ed. 892, and Murray v. Lardner, 69 U. S. (2 Wall.) 110, 17 L. Ed. 857, to establish the rule as to a transfer of negotiable paper by a holder to an innocent purchaser.

In Murray v. Lardner, supra, on page 121 of 2 Wall. (17 L. Ed. 857), the court says:

"Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part."

But in the next paragraph the court says:

"The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and willful ignorance alike involve the result of bad faith. They are the same in effect."

In the case of National City Bank of Chicago v. Wagner, supra, an innocent holder of stock certificates taken as collateral was held to be entitled to treat them according to the law of negotiable paper instead of under the rule of caveat emptor, which rule was stated to apply to the purchaser of chattels from one in possession.

But this was on the authority of National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241, in which an innocent purchaser was allowed to hold stock certificates as against one whose agent had stolen or converted them when they were intrusted to him indorsed.

In the case at bar the question of fact was not as to the intrusting by the plaintiff; it was rather as to the innocence of the defendant. His knowledge, or facts sufficient to give him knowledge, is established by the jury's verdict, and his plea of good faith, i. e., lack of knowledge, has been decided against him. In other words, he has been held to have acted in bad faith; that is, in fraud.

The trial court overruled the defendant as to the question of estoppel, and we think properly, for the charge of conversion is based upon the later out and out purchase of the stock, which was presented to the jury upon a charge which left to the jury the question of good faith in the making of this purchase and not in the earlier loan transactions. On this the verdict of the jury justifies the action of the court.

But further, when it appeared that the plaintiff had previously authorized certain loans, and when it appeared that her failure to receive a fair return from the amounts borrowed was due to her own mistake and to her deception by Hall, the trial court expressly deducted as a set-off from the amount which the plaintiff could recover, the total of the loans which had been advanced by the defendant to Hall, or for the plaintiff, prior to the time when the defendant had knowledge of the defect in Hall's title. In fact, some of the loans which were deducted were not made until after knowledge on the part of the defendant as to Hall's character, but the action of the trial court in allowing these to be included in the set-off was in the defendant's favor and cannot be urged as error upon appeal.

In addition to the charge by the plaintiff that the defendant had wrongfully converted her stock by purchase after knowledge sufficient to inform him that his actions could not be in good faith, testimony was presented to show that the defendant had dealings with Hall in securing options upon other blocks of stock of the same company, and in attempting to arrange a sale (to be partly for the defendant's benefit) of all of the properties of the company, if control of the stock were gained by Hall and the defendant.

The plaintiff also showed payment by Hall to the defendant for his services with respect to these transactions. In some instances these payments were made before the services were actually rendered, or even while Hall and the defendant were negotiating about matters as to which an agreement was never reached and in which Hall did not keep faith with the defendant.

These matters were all properly left to the jury, and the defendant was fully protected when the trial court ordered the jury to deduct from the amount of any recovery, if a verdict were reached, such sums as the defendant had actually advanced as loans, but which were thereafter credited as a part of the purchase price for the stock when the sale was made by Hall to the defendant. Hall with the defendant's help had the blank shares of stock (indorsed by the plaintiff and then in Hall's possession) transferred to Hall's name, at a time when, as the jury has found, the defendant should have known that Hall did not have authority to convey them outright, or to have them transferred for any purpose except to obtain loans for the plaintiff.

If the sale was in the face of knowledge by the defendant of the limitations upon Hall's authority, then, as these loans were considered paid by taking the amount of the loans as a part payment for the stock, the defendant could ask no more than to be treated as an innocent lender or pledgee, as to any transactions which were not vitiated by his subsequent purchases with knowledge of that which previously he may have had no information concerning.

[2] A person whose property has been converted or disposed of through fraud upon the part of one clothed with apparent title for a limited purpose need not, in order to obtain that property from a person dealing (with knowledge or under circumstances sufficient to put him on notice) with the wrongdoer, tender to the third party the amount out of which the third party has been defrauded in reliance upon the representations of the wrongdoer. This is the customary doctrine in dealing with the purchasers of stolen property and by analogy the propositions held good in the present case.

But a person seeking to recover property to which that person has never lost title may be required to reimburse a second person who has been led to act to the injury of that second person, through the negligence or carelessness of the person seeking to recover the property or the value thereof.

The trial court, it would seem, properly diminished the amount which could be claimed by the plaintiff from the defendant, and allowed to the defendant those items which he might have enforced as a valid lien against the plaintiff, even though he had technically lost his right

to claim that lien by acts which were in effect payment of the advances to him and a subsequent purchase by him of the very property upon which the advances had been made.

The defendant has also excepted to the exclusion by the court of certain amounts expended by the defendant on Hall's account in endeavoring to secure an option upon other stock of the same company, and in borrowing money to replenish his own bank account so as to make the loan. He also excepted because the facts as to $2,700 received from Hall or Davis by an entirely outside party, who had loaned this amount on stock belonging to the plaintiff and which stock was in the hands of the Traders' National Bank, were submitted to the jury.

It does not appear that this stock was a part of that upon which the defendant made loans originally, and the question was properly left to the jury as to whether this expenditure was made by the defendant, and whether the money was advanced by him after the conversion was complete and after knowledge that Hall's right to sell the stock was defective. The same question might have been left to the jury as to some of the other loans which were taken up directly by the defendant; but as the ruling of the trial court was in the defendant's favor, and as the plaintiff has not appealed, these other matters can now be disregarded.

It is unnecessary to discuss in this opinion the various details relating to the visits of the defendant and of an attorney, who represented Hall in some of the transactions, to the plaintiff after Hall's fraud had been discovered by her; nor even the contradiction between the parties as to the statements of the plaintiff at the office of this same attorney, when the plaintiff was to be called as a witness to prove Hall's authority in paying off previous loans made by her upon her stock, and in taking over the stock as her agent or attorney in fact. These matters have been disposed of by the verdict of the jury.

The defendant contends that he has raised by his exceptions the right of the plaintiff to maintain an action in trover, inasmuch as he also contends that she had no more than an equitable cause of action to set aside the transfer of her stock as evidenced by its indorsement in blank, its delivery to Hall, and the agreements into which she had entered with Hall or with Hall and one Story, who seems to have been a party to the early negotiations by which Hall undertook to later effect the purchase of the plaintiff's stock.

The instruments offered in evidence show upon their face that no actual sale was ever consummated to Hall. The instruments were ambiguous and contradictory on their face. Parol evidence as to the character of the transactions could be offered, and, if notice was brought home to the defendant, then the plaintiff was not estopped from testifying as to the real character of the transactions upon the trial. Nor was she estopped from electing to charge conversion and to limit her recovery to such damage as she had suffered by the transfer of apparent title to her stock. As the action was brought with reference to funds of the plaintiff (subject only to certain contract rights) which were converted to the use of the defendant, then the

objection based upon the failure to claim return of the specific thing converted is not valid.

The plaintiff in this action has exercised her right to charge that the defendant had converted to his own use—that is, that he had transferred into his own name—the property which is the object of the action. A claim of damages for that act, equal to the value of the stock, would leave the stock itself in the possession of the defendant, and evidence as to the value of the stock would be admissible in proving the amount of damage. In this way the charge of the court appears to have been correct, and, as has been said before, when the court deducted the amount of the defendant's loans and thereby left the plaintiff with recourse only against Hall for such amounts as she had failed to receive from these loans, the defendant was thereby given all the protection to which he had a right.

[3] The defendant lays great stress upon the charge of the court, as follows:

"But if Mr. Davis, without intending to perpetrate a fraud, nevertheless in view of all the facts and circumstances acted in a, manner in which a prudent man would not act under similar circumstances and thereby lacked good faith, then he is responsible without any reflection upon his uprightness or integrity as a man and a citizen of this or any other community."

Again, the court charged the jury that, after notice of Hall's character, a doctrine similar to that of caveat emptor applies. And, again, after illustrating what was meant by the rule of prudence in the conduct of one's own affairs, the court said:

"In order to test what prudence is, you will say to yourselves, 'After this telephone conversation, how would a prudent man act in conducting his own affairs, in a similar transaction?'"

These particular sentences as charged were not specifically excepted to, but the defendant did take exception to a refusal to charge a fifth request "as framed," and to the charge of the court that a person might be guilty of conversion without doing things which would hold him up to obloquy or contempt in the community in which he lives.

The fifth request was as follows:

"Fifth. In order to entitle the plaintiff to recover, the jury must be satisfied by a preponderance of evidence that the defendant, in purchasing the stock from Hall, acted in bad faith and with the intent to commit a fraud upon the plaintiff. The fact that the defendant did what the evidence shows was done to ascertain the relationship of Hall to the plaintiff may be considered in favor of the defendant as in evidence of his good faith. Even if the jury should find that what Davis did in this behalf was not the most that could have been done, indeed even if Davis was negligent, the verdict should still be for the defendant unless the jury believe that Davis was acting in fraud of Miss Finch."

The defendant now urges that the charge of the court was insufficient and prejudicial, in that it left to the jury merely the determination of the defendant's good faith, instead of instructing them as requested.

It appears from the record that a demurrer to the complaint had been interposed prior to the trial. It was held upon argument of this

demurrer that good faith was a defense, and that it need not be denied in the allegations of the complaint.

The fifth request to charge quoted above appears to have been presented to the court before the taking of evidence was completed. The refusal of the court to change its charge, and its declination to charge the fifth request as framed, occurred after the defendant had claimed the right to close the summing up, and after the plaintiff as well as the court had acquiesced in the statement that the defendant was to be allowed to show his good faith as an affirmative proposition for the jury's consideration. But even under these circumstances the court did charge:

"If Mr. Davis in good faith made the purchases and possessed himself of this stock he is entitled to keep the stock." And again: "If you decide that at the time when Mr. Davis made the purchases, first, that Hall had the right to sell, or, secondly, that Davis purchased in good faith, then your verdict will be for the defendant. If, on the other hand, you find that Hall did not at the times of the purchases have the right to sell, and that Davis did not act in good faith tested by the rules that I have several times stated, then you will find a verdict for the plaintiff."

It appears from the entire charge that the question of prudence was presented to the jury merely as the standard from which they should view the defendant's conduct in testing whether or not his acts were those of one acting in good faith. The jury were to determine whether the defendant, using the knowledge which he had in the way in which a prudent man would, then satisfied them of his good faith, or whether, on the contrary, his failure to consider the information in his possession was equivalent to bad faith or what, if intentionally done, would be fraud upon the plaintiff.

The court's charge was in this respect not prejudicial, and the attempt of the court to indicate to the jury that the defendant might be guilty of fraud, and still not have so acted as to make himself an object of contempt or disgrace to his neighbors, could not have injured the defendant in the jury's eyes. Their findings upon the facts as charged disposed of the question, and it is impossible to believe that the jury would have failed to render the same verdict if the court had not expressed the opinion that the defendant might be guilty of the conversion and still be considered by his neighbors as incapable of an intentional and deliberate theft.

The defendant seeks to carry over the test of prudence (which the court limited to the acts of the defendant in failing to learn further about what should have been of itself sufficient warning), into a suggestion that the court led the jury to believe that the plaintiff was entitled to a verdict merely if the defendant was not prudent in the sense of being suspicious of Hall, even though the acts suspected would not affect Hall's title to the stock.

It is impossible to believe that the jury misunderstood the judge's charge in this respect, or that the issue was not fairly presented. The defendant is in the possession of property which was converted to the use of the defendant, as charged in the complaint, by the defendant jointly with Hall, and which upon the election of the plaintiff to claim damages equal to the value of the stock, and upon proof by the plain-

tiff that the defendant's title was transferred through a wrongdoer, could not estop the plaintiff from showing the wrong and repudiating the apparent transfer of title if the property was found in the hands of a person having knowledge of the circumstances, or reason to believe that the circumstances existed, particularly if any sums advanced by this third party in good faith are restored by the result of the litigation.

The judgment is affirmed, with costs.

WARD, Circuit Judge (dissenting). When the plaintiff proved, as the jury has found she did, that Hall had swindled her out of the stock in question, the defendant was bound to show that he had purchased it from Hall in good faith for value. The defense is not that certificates of stock indorsed in blank are negotiable instruments like commercial paper, but that the plaintiff's conduct was such as to estop her from asserting her title to the stock against the defendant. The certificates were not lost by or stolen from her, but were put by her deliberately in the possession and absolute control of Hall. As soon as the defendant was put upon inquiry as to Hall's character, he applied over the long distance telephone to the plaintiff for information about Hall and his relations to the stock. The plaintiff certainly then expressed the most implicit confidence in Hall as her agent, and the only doubt is whether she confined his agency to pledging the stock for her account as distinguished from selling it for her, and whether, if she did, the defendant appreciated the distinction. It was a question for the jury to say whether thereafter the defendant acted in good faith. But I think the court below erred in charging the jury that the test of good faith was whether the defendant acted as a prudent man should have acted, and that this objection was sufficiently raised by exception to the court's refusal to charge the defendant's fifth request. Negligence is not proof of want of good faith unless so gross as to be consistent only with bad faith. Murray v. Lardner, 2 Wall. 110, 17 L. Ed. 857. The charge was in this respect very prejudicial to the defendant, and I think the judgment should be reversed.